UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ULTEGRA, LLC and | : | CIVIL ACTION NO.: |
| GRETCHEN CHIPPERINI, | : | 3:09-cv-1284 (MRK) |
| Plaintiffs, | : | |
| v. | : | |
| MYSTIC FIRE DISTRICT, ET AL, | : | |
| Defendants. | : | SEPTEMBER 4, 2012 |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS MYSTIC FIRE DISTRICT,
ET AL

Pursuant to Fed. Rule of Civ. Proc. 56, and Rule 56 of the Local Rules of Civil Procedure for the District of Connecticut, Defendants **Mystic Fire District, Richard (misnamed as "Christopher" in Complaint) Wilkins, Frank C. Hilbert, Anthony P. Manfredi, Jr., Christopher May, John H. Kennedy, Kyle Hilbert, Chris Paige, Brian Molkenthin and Nickolas Allyn**, respectfully submit the following Memorandum of Law, with attached Exhibits, in support of their Motion for Summary Judgment:

I.      **BACKGROUND**

On or about May 6, 2008, defendant William Celtruda ("Celtruda")[1] was voted in by the members of the B.F. Hoxie Engine Company, No. 1, as a probationary volunteer fireman.  Shortly thereafter, Celtruda began his Firefighter 1 training with the Connecticut State Fire Academy in Cromwell, Connecticut.  In the early morning hours of July 25, 2008, defendant Celtruda left the B.F. Hoxie Engine House and intentionally set fire to

---

[1] Celtruda is a pro se litigant in this case.

an unoccupied residence owned by plaintiffs[2] Gretchen Chipperini (hereinafter "Chipperini") and Ultegra, LLC, and located at 23 Liberty Street, in Mystic, Connecticut. Defendant Celtruda was arrested one month later (on August 20, 2008) and admitted to setting this house, and others, on fire during a two week span.  He is serving an 18 year sentence for his crimes.

   This lawsuit ensued.

   a.   *Causes of Action in Plaintiffs' Complaint*

   Plaintiffs' complaint contains twenty eight[3] (28) counts.   All of the individual defendants are sued in:  (1) negligence (Counts 1, 3, 5, 7, 9, 11, 14, 17, and 20); and (2) for civil rights violations under 42 U.S.C. Section 1983 (Counts 2, 4, 6, 8, 10, 12, 15, 18 and 21).[4]  Defendants **Kyle Hilbert, Chris Paige, Brian Molkenthin and Nick Allyn** have also been sued in "wanton and reckless conduct" (Counts 13, 16, 19 and 22, respectively).   The Mystic Fire District is sued under General Statutes §§ 52-557n (Count 26), Section 7-308 (Count 27), and Section 7-465 (Count 28).

   For ease and clarity, the individual defendants can be said to fall into two distinct groups/categories:  (1) volunteer firemen (defendants **Kyle Hilbert, Chris Paige, Brian Molkenthin and Nick Allyn**) living in the fire station's bunk house on July 24, 2008, and the early morning hours of July 25, 2008; and (2) officers/directors of the Mystic Fire District and Hoxie Fire Station (**District Chairman (now deceased) Richard Wilkins, District Treasurer John Kennedy, Fire Chief F. Hilbert, Assistant Fire Chief**

---

[2] Plaintiffs' counsel recently withdrew with prejudice the claims of plaintiff Inge Chipperini, plaintiff Gretchen Chipperini's mother.
[3] Counts 29 through 32, inclusive, against the Towns of Stonington and Groton have been withdrawn/voluntarily dismissed.
[4] Counts 23, 24 and 25 are directed against pro se defendant William Celtruda.

**Manfredi, District President Kennedy and Captain May**).   Defendant Mystic Fire District is a body politic established by a special act of the Connecticut General Assembly on March 25, 1879, for purposes of providing, *inter alia*, fire suppression services to the citizens of the Fire District.

      b.    *Plaintiffs' Factual Allegations in the Complaint*

The factual allegations of the plaintiffs' complaint are contained in Count One, and are subsequently re-alleged in ALL subsequent counts.   *See*, <u>Plaintiffs' July 16, 2009 Complaint</u>, attached hereto and marked as **Exhibit A**.   The allegations are as follows:  on July 24, 2008, defendants Kyle Hilbert, Nick Allyn, Chris Paige and Brian Molkenthin (hereinafter "defendant volunteer firemen") were on duty and living in the Hoxie Fire Station. *Id*. at ¶ 19.  During that evening, the defendant volunteer firemen and defendant William Celtruda either consumed and/or permitted the consumption of alcohol in the fire station. *Id.*, at ¶ 20.  Defendant volunteer firemen and defendant Celtruda became intoxicated and suffered a diminishment of their judgment and faculties. *Id.*, at ¶ 21.  During the evening of July 24, 2008 only, the defendant volunteer firemen "taunted and teased" defendant William Celtruda concerning his never having fought a structural fire." *Id.*, at ¶ 22.

At approximately 2:00 a.m., and while intoxicated, defendant William Celtruda and Defendant K. Hilbert broke a plastic table while inside the fire station, then removed the table to the outside and thereafter set the table on fire. Id., at ¶¶ 24 and 25.  Later, at around 3:30 a.m., defendants K. Hilbert and defendant William Celtruda reentered the fire house to go to sleep, where defendant Celtruda was prevented from sleeping in the bunkroom.  Defendant Celtruda then left the fire station in an intoxicated state and set

fire to the plaintiff's house on 23 Library Street. *Id*. at ¶¶ 27 and 28.   Hearing the fire station's alarm, the defendant volunteer firemen and defendant Celtruda responded to the plaintiffs' house fire to employ fire suppression activities, all while in a drunken and intoxicated state. *Id*., at ¶ 30.

### i.   Negligence Counts against Mystic Fire District Officers/Board Members

As for the negligence counts against the Mystic Fire District Officers/Board Members, plaintiffs allege that the individual officer/director defendants (F. Hilbert, Manfredi, May, Kennedy) failed to:

a. Provide for the proper training and supervision of the firefighters and officers of the Fire District, including but not limited to the Defendant, William Celtruda;
b. Establish and/or enforce policies prohibiting the consumption of beverage alcohol by and/or the intoxication of firefighters while on duty;
c. Establish and/or enforce policies to prevent hazing, mistreatment and/or taunting of junior members;
d. Intervene and prevent the setting of the fire; and/or
e. Permitted firefighters who were under the influence of beverage alcohol to participate in fire department operations and/or duties in violation of NFPA 1500 and/or NFPA 1500 Section 10.1.5.

### ii.   Negligence Counts Against Volunteer Firemen Defendants

Plaintiffs allege the Volunteer Firemen Defendants were negligent in that they:

a. Failed to properly train and/or supervise the defendant William Celtruda;
b. Failed to prevent the consumption of beverage alcohol by other firefighters while on duty in violation of the policies, rules and procedures of the Mystic Fire District and/or the Hoxie Company and/or NFPA 1500 and/or NFPA 1500 Section 10.1.5;
c. Consumed beverage alcohol while on duty in violation of the above policies, rules and procedures;
d. Furnished beverage alcohol to the defendant William Celtruda, causing him to become intoxicated in violation of the above policies and procedures;

e. Failed to prevent the hazing, mistreatment and/or taunting of probationary firefighters, including defendant Celtruda, in violation of fire house policies;
f. Failed to intervene and prevent the setting of the fire; and/or;
g. Allowed and/or required defendant Celtruda, to leave the fire station in an intoxicated state when they knew he was impaired and wanted to start a structural fire;

### iii. Wanton and Reckless Conduct Counts (K. Hilbert, Paige, Molkenthin and Allyn)

Plaintiff alleges that the Volunteer Firemen defendants:

a. Failed to prevent the consumption of beverage alcohol by firefighters while on duty and consumed beverage alcohol to the point of becoming intoxicated when they knew or should have known said consumption would result in diminished judgment in violation of fire house rules and policies and procedures, as well as NFPA 1500 and/or NFPA 1500 Section 10.1.5;
b. Furnished beverage alcohol to the defendant William Celtruda while on duty causing him to become intoxicated resulting in the loss of his judgment when they knew Celtruda desired to fight a structural fire, all in violation of the above rules, policies and procedures
c. Failed to prevent the hazing, mistreatment and/or taunting of Celtruda when they knew Celtruda wanted to fight a structural fire and participated in starting a fire that night at the fire house in violation of the policies and procedures above;
d. Permitted and/or required Celtruda to leave the fire station in a drunken condition when they knew or should have known the Celtruda's judgment was impaired and he wanted to fight a structural fire.

## II. LOCAL RULE 9(c)1 STATEMENT

1. The Mystic Fire District was created by a Special Act of the General Assembly entitled "An Act Incorporating the Mystic Fire District and the Towns of Groton and Stonington" and approved on March 25, 1879, and amended and supplemented thereafter. Plaintiffs' Complaint, ¶ 5, **Exhibit A**; **Affidavit of Fire Chief Frank Hilbert**, ¶ 2, **Exhibit B**.

2. By way of state statue and the District's by-laws, the Mystic Fire District is governed by a three (3) person Executive Committee, all of whom are elected

by the citizens of the District for two year terms by way of a popular election. F. Hilbert Affidavit, ¶ 4, **Exhibit B**.

3. The Executive Committee is responsible for the overall operation of the Fire District, including the setting of the tax rate for citizens within the District, approving budgets and purchasing equipment and property.  F. Hilbert Affidavit, ¶ 7, **Exhibit B**.

4. The Mystic Fire District owns the property and fire apparatus equipment located at 34 Broadway Street, Mystic Connecticut.  F. Hilbert Affidavit, ¶ 3, **Exhibit B**.

5. The B.F. Hoxie Engine Co., No. 1 is a corporation existing under the laws of the State of Connecticut, the purpose of which is to help save and preserve the life and property of the members of the community and surrounding fire districts.  B.F. Hoxie Engine Co. operates out of a fire station at 34 Broadway Street, Mystic.  See, Bylaws of the B.F. Hoxie Engine Co., No. 1, a true and accurate copy of the by-laws are attached hereto as **Exhibit B** to the Affidavit of Captain Christopher May, at ¶ 15, attached as **Exhibit C**.

6. Frank Hilbert is the Chief of the Mystic Fire District.   Hilbert Affidavit, ¶  2, **Exhibit A**.

7. Anthony Manfredi is the Assistant Chief of the Mystic Fire District.  See, Affidavit of Anthony Manfredi, at ¶ 2, attached hereto and marked as **Exhibit D**.

8.  In 2008, Richard (incorrectly named in the complaint at "Christopher") Wilkins was the Chairman of the three-person Executive Committee of the Mystic Fire District.   Mr. Wilkins is deceased.  F. Hilbert Affidavit, ¶ 5, **Exhibit A**.

9.  In 2008, John Kennedy was the treasurer for the Mystic Fire District. Kennedy was not a member of the Executive Committee and has no responsibility for the operation of the Fire District or the two fire companies within the Mystic Fire District.  Hilbert Affidavit, ¶ 6, Exhibit A.

10. Christopher May is the highest ranking officer of B. F. Hoxie Engine Company, No. 1, Inc., and at all times relevant held the rank of Captain. Captain May oversees the entire operations at B.F. Hoxie Engine Company. May Affidavit, ¶ 2, **Exhibit C**.

11. In 2008, a person seeking to become a volunteer at B.F. Hoxie Engine Company was required fill out a membership application, which requires the applicant to be recommended by at least one current member of the Company. May Affidavit, ¶ 6, **Exhibit C.**

12. Once the application is submitted, the application is brought up at the next monthly membership meeting.  May Affidavit, ¶ 7, **Exhibit C.**   Membership then votes on the application.

13. In the case of William Celtruda, he applied to become an active volunteer member on or about March 1, 2008, and was voted in the department as a probationary member on May 6, 2008.  May Affidavit, Exhibit C, ¶ ¶ 8 and 9. A true and accurate copy of Celtruda's membership application is attached to the May Affidavit as Exhibit A.  May Affidavit, Exhibit C, ¶ 9.

14. B.F. Hoxie Company or the Mystic Fire District had not and did not conduct criminal background checks or psychological screening of applicants, including defendant William Celtruda. *Id.*, at ¶ 11.

15. After being voted in as a probationary member of the B.F. Hoxie Engine Company No. 1, Celtruda began Firefighter 1 training at the State Fire Academy in Cromwell, Connecticut. *Id.*, at ¶ 10.

16. Celtruda was never disciplined during his Firefighter 1 training, or during his probationary status.   He was not discipline by B.F. Hoxie Company prior to his arrest.   He exhibited no usual behavior – and none was report to Captain May – during his short tenure with the department before his arrest.   May Affidavit, **Exhibit C**, ¶ 13

17. During his probationary status and training with the State Fire Academy, Celtruda was permitted to participate in emergency calls, training and fulfill other firefighter duties.   May Affidavit, **Exhibit C**, ¶ 12.

18. Under B.F. Hoxie Bylaws and House Rules, no person under the legal drinking age, including volunteer firemen, were permitted to consume alcohol in the fire station.   May Affidavit, **Exhibit C**, ¶ 14.   Under the Bylaws, alcohol consumption for those of legal drinking age was permitted in the fire house only as provided by the Company. *Id.*, **Exhibit C**, ¶ 15.   The Company permitted alcohol consumption for those of legal drinking age at social events and the weekly fish fry fundraisers. *Id.*, at ¶ 16.   A keg a beer was kept in the fire station's refrigerator and was used to make the fish fry batter. *Id.*

19. Volunteers living the fire station's bunk room are required to follow B.F. Hoxie's Bunk Rules, which prohibit smoking, eating and drinking in the bunk room. In addition, no person was permitted to be intoxicated in the bunk room. May Affidavit, **Exhibit C**, ¶ 17.

20. At no time did any member of the B.F. Hoxie Engine Company No. 1 tease or taunt Mr. Celtruda concerning his status as a probationary member or the fact that he had not fought a fire during his short tenure as a probationary volunteer fireman for B.F. Hoxie Engine Company No. 1. See, May Affidavit, **Exhibit C**, ¶ 19; Affidavit of Brian Molkenthin, ¶ 12, attached hereto and marked as **Exhibit E**; Affidavit of Nickolas Allyn, ¶ 8, attached hereto and marked as **Exhibit F**; Affidavit of Kyle Hilbert, ¶ 15, attached hereto and marked as **Exhibit G**; Affidavit of Christopher Paige, ¶ 9, attached hereto and marked as **Exhibit H**.

21. Mr. Celtruda never indicated to any of the defendants, in word or deed, that he intended on setting a structure(s) on fire and none of the defendants had any reason to believe that Celtruda would at any time commit arson. See, May Affidavit, **Exhibit C**, ¶ 20; Affidavit of Brian Molkenthin, ¶ 14, attached hereto and marked as **Exhibit E**; Affidavit of Nickolas Allyn, ¶ 10, attached hereto and marked as **Exhibit F**; Affidavit of Kyle Hilbert, ¶ 17, attached hereto and marked as **Exhibit G**; Affidavit of Christopher Paige, ¶ 11, attached hereto and marked as **Exhibit H**; Affidavit of Frank Hilbert, ¶ 11, Exhibit A; Affidavit of Anthony Manfredi, **Exhibit D**, ¶ 4, Affidavit of John Kennedy, attached hereto and marked as **Exhibit I**.

22. Defendants Christopher Paige, Brian Molkenthin, and Nickolas Paige did not consume alcohol on July 24, 2008 in the fire house.   Affidavit of Brian Molkenthin, ¶ 8, **Exhibit E**; Affidavit of Nickolas Allyn, ¶ 7, **Exhibit F**; Affidavit of Christopher Paige, ¶ 8, **Exhibit H**.

23. On July 24, 2008, William Celtruda and defendant Chris Paige travelled     to the State Fire Academy in Cromwell, Connecticut for Firefighter 1 training, and arrived back at the fire house at approximately 11:00 p.m.   Paige Affidavit, **Exhibit H**, ¶ 4.

24. After returning to the fire Station, Kyle Hilbert, Chris Paige and William Celtruda practiced some additional fire drills.  Paige Affidavit, **Exhibit H**, ¶ 4; K. Hilbert Affidavit, **Exhibit G**, ¶ 6.

25. During this time, defendants Nickolas Allyn and Brian Molkenthin were already upstairs in bed in the station's bunk room.  Allyn Affidavit, **Exhibit F**, ¶ 3-4; Molkenthin Affidavit, **Exhibit E**, ¶ 6-7.

26.  Defendant Christopher Paige, after finishing the fire drills, headed up the bunk room at around midnight while Mr. K. Hilbert and Mr. Celtruda remained downstairs.  Paige Affidavit, **Exhibit H**, ¶ 5.

27. At some point, Celtruda and defendant K. Hilbert – in violation of the District's bylaws and fire house Bunk Rules, started consuming alcohol they obtained at the firehouse from a keg located in the fire house kitchen.  This keg is used to make beer batter for the weekly fish fry fundraiser at the fire house. K. Hilbert Affidavit, **Exhibit G**, ¶ 8.

28. During this time, K. Hilbert and Celtruda talked about firefighting, firefighting techniques and the dangers and safety associated with some of Hilbert's firefighting experiences.   K. Hilbert Affidavit, **Exhibit G**, ¶ 9.

29. While drinking beer and talking between approximately midnight and 1 p.m., Celtruda and K. Hilbert were sitting on a plastic table located in the fire house's main room when the table collapsed underneath them.   K. Hilbert Affidavit, **Exhibit G**, ¶ 11.

30. Celtruda and K. Hilbert then took table outside to rear of the station's parking lot, placed an accelerant on the table and started to burn the table.   K. Hilbert then took a Sawzall and cut the table into small pieces and disgarded it. _Id._, at ¶ 12.

31. Celtruda and K. Hilbert then proceeded upstairs to the bunk room at approximately 3:30 a.m.   _Id._, at ¶ 12.

32. Celtruda attempted to get into an empty bed in the bunk room got into an argument with Brian Molkenthin about Celtruda's removal of folded laundry from the empty bed.   _Id._, at ¶ 13; Molkenthin Affidavit, **Exhibit E**, ¶ 9. Molkenthin yelled at Celtruda and told him to go into in the "day room" located adjacent to the bunkroom.   Molkenthin Affidavit, **Exhibit E**, ¶ 9.

33. Christopher Paige also was awakened by the noise, and Celtruda's apparently intoxicated state, and also asked Celtruda to sleep in the "day room" but not to leave the fire house. Paige Affidavit, **Exhibit H**, ¶ 6.

34. Thereafter, the fire station's alarm activated at approximately 5:00 a.m. for a structure fire at 23 Library Street. Allyn Affidavit, **Exhibit F**, ¶ 6.

35. Sometime prior to this, Celtruda left the station and intentionally set fire to the plaintiff's residence at 23 Library Street.   Plaintiff's Complaint, **Exhibit A**, ¶ 28.

36. No firemen from the B.F. Hoxie Engine Station No. 1 or any officer/director of the Mystic Fire District had any knowledge that Celtruda intended on committing arson. See, May Affidavit, **Exhibit C**, ¶ 20; Affidavit of Brian Molkenthin, ¶ 14, attached hereto and marked as **Exhibit E**; Affidavit of Nicklas Allyn, ¶ 10, attached hereto and marked as **Exhibit F**; Affidavit of Kyle Hilbert, ¶ 17, attached hereto and marked as **Exhibit G**; Affidavit of Christopher Paige, ¶ 11, attached hereto and marked as **Exhibit H**; Affidavit of Frank Hilbert, ¶ 11, Exhibit A; Affidavit of Anthony Manfredi, **Exhibit D**, ¶ 4, Affidavit of John Kennedy, attached hereto and marked as **Exhibit I**.

37.  Prior to July 24, 2008, no member of the B.F. Hoxie Engine Company, No. I had ever intentionally set a fire, or been suspected of intentionally setting a fire.   F. Hilbert Affidavit, **Exhibit B**, ¶ 12.

## III.   LAW AND ARGUMENT

## A.  PLAINTIFF'S COUNTS BROUGHT UNDER 42 U.S.C. § 1983

### a.  Plaintiff fails to allege and cannot prove a constitutional violation

Plaintiffs claim damages and losses associated with the total destruction of their residence on 23 Library Road in Mystic by defendant William Celtruda, who under cover of darkness and acting alone and in complete secrecy, intentionally set fire to the unoccupied home at approximately 4:00 a.m. on July 25, 2008.   In the complaint, the plaintiffs incorporate the allegations in the negligence counts into a purported "civil rights action" count and, in conclusory fashion only, allege that each of the individual defendants was "acting as a firefighter for the Mystic Fire District and acting under the color of law" and "caused the plaintiffs to be deprived of their property" in violation of 42 U.S.C. § 1983.[5]   Based on these scant allegations, the defendants are entitled to judgment as a matter of law because the plaintiff has failed to allege any constitutional provision allegedly violated by the alleged conduct of the individual defendants.   "In order to prevail on a section 1983 claim, the plaintiff must show that the defendant's conduct deprived him of a federal right." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).   No such right has been alleged or shown.

---

[5] The individual defendants are sued in their individual capacities only, and not in their official capacities. As such, the plaintiffs have not asserted any *Monell* claims directly against the Mystic Fire District.  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978) (municipality may be held liable for policy or custom that affirmatively deprives citizen of his constitutional rights).  There is no respondeat superior liability under 42 U.S.C. § 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

> **b.  None of the individual Mystic Defendants caused a deprivation of
> Plaintiffs' Property Interest in violation of plaintiffs' constitutional
> rights.**

The only constitutional right even remotely implicated by the plaintiff's allegations
is the substantive due process clause of the Fourteenth Amendment to the U.S.
Constitution.   However, the due process clause provides no such relief to the plaintiffs.

42 U.S.C. § 1983 provides no substantive rights, only a remedy for violation of
rights found in the federal constitution and under state law, the most basic being the right
not to be deprived of life, liberty and property without due process of law   *Maine v.
Thiboutot*, 448 U.S. 1 (1980).  Although the plaintiffs possessed a property interest in the
unoccupied residence at 23 Library Street, the substantive due process clause protects
citizens from **conduct of state actors,** regardless of any pre or post procedural due
process, that is of such an egregious nature as to "shock the conscience" of the court.
*County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Pena v. DePrisco*, 432 F.3d
98, 112 (2d Cir. 2005).   "So-called 'substantive due process' prevents the government
from engaging in conduct that "shocks the conscience,' . . . or interferes with rights
'implicit in the concept of ordered liberty."   *United States v. Salerno*, 481 U.S. 739, 746
(1987).   The guarantee of due process under the 14[th] Amendment is applicable only to
"deliberate" decisions of a state actor depriving a citizen of "life, liberty or property" and
"to hold that injury caused by [lack of due care or negligent conduct] is a deprivation
within the meaning of the Fourteenth Amendment would trivialize the centuries-old

principle of due process of law. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). "Only an affirmative act can amount to violation of substantive due process, because Due Process is phrased as a limitation of the state's power to act, not as a guarantee of certain minimal levels of safety and security." *Lombardi v. Whitman*, 485 F.3d 73, 79 (2nd Cir. 2007); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3rd Cir. 1995) (holding no substantive due process right at issue against Borough and Fire Department where firefighter, acting on his own, intentionally sets fire to plaintiff's business).

In this case, the individual defendants are entitled to judgment as a matter of law because none of the conduct alleged by the plaintiff can be deemed to be so "conscious shocking" as to violate the due process clause. See, Defendants' Rule 56(a)(1) Statement of Undisputed Facts, and Plaintiffs' Complaint, **Exhibit A**. Even assuming the truth of the plaintiffs' allegations, said allegations amount to no more than negligent (and passive) conduct on the part of those responsible for admitting members to the B.F. Hoxie Engine Company, No. 1. These allegations amount to failing to conduct an appropriate psychological screening of a potential volunteer, and failing to properly train, supervise, and enforce appropriate policies within the fire house. Such failures, even assuming such should have occurred, are really negligence claims dressed up in the garb of a faux constitutional violation. Such dressing "trivializes" the 14th Amendment's due process clause. Such conduct certainly does not rise, or even approach "the most egregious official conduct [that] can be said to be 'arbitrary in the constitutional sense. . . " *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992); *see also, County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

c. **None of the individual Mystic defendants had "personal involvement" in the alleged constitutional deprivation, if any**.

Defendants are entitled to judgment as a matter of law with regard to the "civil rights action" counts because none of the defendants personally participated in any alleged constitutional violation.

"In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or law of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).   Under the first prong, a defendant acting under color of law must engage in conduct that causes a constitutional deprivation.   "It is well settled in this circuit that 'personal involvement' of defendants in alleged Constitutional deprivations is a prerequisite to an award of damages under §1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991).

Here, it is undisputed that defendant William Celtruda engaged in the conduct – criminal arson – that caused the plaintiff to lose her home. *See*, Plaintiff's Complaint, **Exhibit A**, ¶ 28 and Defendants' Answer at ¶ 28.   None of the defendant volunteer firemen living in the fire house on the night of the fire – defendants K. Hilbert, Paige, Molkenthin, and Allyn – were "personally involved" in setting the fire, and none had any idea or inclination that Celtruda would leave the fire house and engaged in criminal conduct.   See, Affidavits of Defendants K. Hilbert, Paige, Molkenthin and Allyn, attached

hereto and marked as **Exhibits E (¶¶ 12, 13, and 14), F (¶¶ 8, 9, and 10), G (¶¶ 16, 16, and 17) and H (¶¶ 9, 10, 11).**

Moreover, defendant K. Hilbert – as defendant Celtruda's supervisor – can not be held liable for Celtruda's subsequent criminal conduct.  "Because vicarious liability is inapplicable to . . . 1983 suits, a plaintiff must plead [and prove] that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).    In this regard, "'personal involvement' may be established through the direct participation by a supervisor in the challenged conduct, or by evidence of a supervisory official's "failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Havut v. State Univ. of New York,* 352 F.3d 733, 753 (2d Cir. 2003).

Here, the plaintiffs fail to allege and cannot prove that any of Celtruda's supervisors engaged in conduct that would fall into any of the above categories.   The defendants' affidavits aver that none knew or suspected or had any idea that Celtruda would set a house on fire at any time.   Absent such knowledge, the defendants can not be held responsible for the criminal conduct of Celtruda.

### d. Plaintiffs do not allege nor can they prove a "state created danger" exception

A narrow class of cases have been recognized as an exception to the general rule that a state actor has no obligation to protect the life, liberty and property of citizens

against invasion by private actors.   *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989).   These cases hold that a substantive due process claim may arise from private harm to another citizen, under the "state created danger" exception, if: (1) the victim of private conduct was in a "special relationship" with the State or (2) if the state or its agents "in some way assisted in creating or increasing the danger **to the victim**." *Matican v. City of New York*, 524   F.3d 151, 155 (2d Cir. 2008).   Under the second exception, affirmative encouragement of the private violence is required; *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993); and the mere failure to intercede is inadequate to state a substantive due process claim." *Pena v. DePrisco*, 432 F.3d 98, 110 (2d Cir. 2005).   The Second Circuit has also recognized that the exception may include circumstances where a state actor provides repeated assurances to a wrongdoer, either explicitly or implicitly, that his private violence against a victim would be met with impunity.   *Id.*, at 115.

Even where one of these exceptions may be applicable, the plaintiff still must prove that the state actors conduct was "so egregious, so outrageous, that it may be said to shock the contemporary conscience." *Id.*, at 155, quoting *County of Sacremento v. Lewis*, 523 U.S. 833, 848 n. 8.

In *Mark v. Borough of Hatboro*, 51 F.3d 1137 (3rd Cir. 1995), a member of a volunteer fire company in Hatboro, Pennsylvania set fire to the plaintiff John D. Mark's auto repair business.   Thereafter, plaintiff brought an action against the Borough of Hatfield and the volunteer fire department under 42 U.S.C. § 1983.   In ruling that the defendants were entitled to summary judgment with respect to all of the plaintiff's civil rights claims, the Third Circuit held, in part:

As a preliminary matter, we reject Mark's attempt to distinguish *DeShaney* by contending that Marley was a state actor when he committed the arson. Marley, the underlying active tortfeasor, acted in a purely private capacity when he committed arson. It is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state. Rather, in order for the tortfeasor to be acting under color of state law, his act must entail '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. . . .' On this point, this case is not even close, unlike, for example, cases in which police officers moonlight as security guards and dress in their police uniforms. . . . Marley set a fire when his obligation was to *put out* fires.

*Id.*, 51 F.3d at 1150-51.

Moreover, the Third Circuit addressed the issue of whether, even assuming some constitutional right at stake, the Borough and/or fire department could be held liable for substantive due process violations for being deliberately indifferent in failing to conduct an adequate psychological screening of the arsonist prior to making his a member of the department. The court held it could not.

The cases where the state-created danger was applied were based on discrete, grossly reckless acts committed by the state or state actors using their peculiar positions as state actors, leaving a discrete plaintiff vulnerable to foreseeable injury. In Wood, for example, the women eventually was raped, and the court held that a jury could find that the officer, using his power as an officer, placed the plaintiff in a situation entailing a foreseeable risk of danger. Indeed, assuming the facts are true, it would be unfair to say that the state actor was not responsible for the rape.

But this case is not like those cases at all. When the alleged unlawful act is a policy directed at the public at large-namely a failure to protect the public by failing adequately to screen applicants for membership in a volunteer fire company-the rationale behind the rule disappears-there can be no specific knowledge by the defendant of the particular plaintiff's condition and there is no relationship between the defendant and the plaintiff.

*Id.*, at 1154.

Here, the plaintiffs were not in in any special relationship with any of the individual defendants or the Mystic Fire District.   Likewise, the individual defendants did not engage in any affirmative conduct that created or assisted in creating a danger, i.e., defendant Celtruda's individual decision to set the plaintiffs' residence on fire.   At best, plaintiff alleges that defendant Kyle Hilbert broke Fire Company rules and drank alcohol with defendant William Celtruda.   In addition, plaintiff alleges that individual firemen defendants teased – on a single night – defendant Celtruda concerning his inexperience and that he had never fought a structure fire.   Even assumed as true for purposes of this motion, these facts do not fall with the exception to the "state created danger" exception.   Even assuming one of these exceptions is applicable, none of the individual defendants conduct can be viewed as "so egregious, so outrageous" as to be conscience shocking.

In fact, the record are completely devoid of any facts concerning knowledge on the part of the individual defendants that defendant Celtruda intended to commit arson. See, May Affidavit, **Exhibit C**, ¶ 20; Affidavit of Brian Molkenthin, ¶ 14, attached hereto and marked as **Exhibit E**; Affidavit of Nickolas Allyn, ¶ 10, attached hereto and marked as **Exhibit F**; Affidavit of Kyle Hilbert, ¶ 17, attached hereto and marked as **Exhibit G**; Affidavit of Christopher Paige, ¶ 11, attached hereto and marked as **Exhibit H**; Affidavit of Frank Hilbert, ¶ 11, Exhibit A; Affidavit of Anthony Manfredi, **Exhibit D**, ¶ 4, Affidavit of John Kennedy, attached hereto and marked as **Exhibit I**.   This makes perfect sense as the defendant Celtruda would not and did not wish anyone to know that he was setting fires.

Without knowledge on the part of any of the individual defendants regarding this, and because no affirmative steps were taken by any of the individual defendants related to the private violence of Celtruda, defendants are entitled to judgment as a matter of law with respect to the plaintiffs' substantive due process claims.

**B. NEGLIGENCE CLAIMS AGAINST ALL DEFENDANTS**

      a. **The defendant Mystic Fire District and the Individual defendants did not owe the plaintiff a duty, because any duty owed in screening candidates or supervising firemen was owed to the public and not the plaintiff individually.**

The Mystic Fire District is a statutorily created governmental body, empowered with authority to tax residents in the district for purposes of providing citizens with fire suppression activity, an essential government function.  See, General Statutes §7-101a (". . . 'municipality' means any town, city, borough, consolidated town and city, consolidated town and borough, district, district department of health, or authority established by the general statutes. . . "). As such, the Mystic Fire District and the individual defendants are entitled to immunity under the public duty doctrine.

The Connecticut Supreme Court in *Shore v. Stonington*, 187 Conn. 147, 152 (1982) reaffirmed the long-standing "public duty doctrine", which provides immunity to public officials on the threshold issue of whether a duty is owed to a particular plaintiff. "If the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be public and not an individual injury, and must be redressed if at all in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for

damages."   _Id._      "The public versus private duty distinction seeks to answer the threshold question of whether the defendant owed the plaintiff a legally cognizable duty." _Gordon v. Bridgeport Housing Authority_, 208 Conn. 161, 170-72 (1988).

"The public duty doctrine recognizes that a fundamental element of any negligence action is a duty owed by the defendant to the plaintiff.   Thus for one to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (i.e. a duty to all is a duty to no one) . . . " (internal quotation marks omitted.) _Violano v. Fernandez_, 280 Conn. 310, n. 13 (2006). "Unlike [governmental immunity, which protects a municipality from liability for breach of an otherwise enforceable duty to the plaintiff, the public duty rule asks whether there was any enforceable duty to the plaintiff in the first place." _Id_. At 335.    Connecticut law is clear that a duty is private in nature only if its performance or nonperformance "will affect an individual _in a manner different in kind from the way it affects the public at large_." (emphasis added.).   _Leger v. Kelly_, 142 Conn. 585, 590-91 (1955)

Here, the Mystic Fire District had no duty to the individual plaintiff to provide "proper training" or "establish and enforce policies" or "implement proper procedures to psychologically screen prospective firefighters" or "intervene and prevent the setting of the fire" as set forth in the complaint.   These duties, if they exist, are owed to the public at large.    Proof of the public nature of these duties is that the "performance or non-performance" of such duties does not affect any individual in a manner different from any other individual.    Accordingly, the defendants are entitled to judgment as a matter of law as none of the defendants owed the plaintiff a private duty.

**b. Even assuming a private duty was owed to the plaintiff, the defendants are entitled to governmental immunity based on the performance of a discretionary act.**

The individual defendants and the Mystic Fire District are entitled to judgment as a matter of law on the grounds that each is entitled to governmental immunity for the performance of a discretionary act.

Here, the plaintiff alleges that the Officer/Director defendants as well as the Volunteer Firemen Defendants failed to properly train, supervise, establish and enforce policies and procedures in connection with: (1) the hazing and mistreatment of probationary firefighters; (2) the consumption of alcohol in the firehouse; and (3) screening prospective firefighters.

All of these activities are discretionary in nature.

General Statutes §52-557n(a)(1)(B) provides for the liability of municipalities for the negligent act or omissions of the political subdivision or any employee except, among others, for acts or omissions "which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

In *Hughes v. City of Hartford*, 96 F.Supp.2d 114 (2000), District Judge Janet Arterton ruled that the ". . . extensive and near unanimous precedent in Connecticut clearly demonstrates that the acts or omissions alleged in plaintiff's complaint – the failure to screen, hire, train, supervise, control and discipline municipal employees – are discretionary acts as a matter of law.  See *Gordon*, 208 Conn. At 179 (noting that the operation of a police department, including discipline of officers, is a discretionary, governmental function); *Stiebitz v. Mahoney*, 144 Conn. 442, 446 (1957) (determining that discharge of duties as chief of police in appointing individuals to police force and

suspending or disciplining them 'required the use of sound discretion' which would not subject chief to liability); *Hubbard v. City of New Britian*, 1996 WL 66238 (Conn. Super.) (granting motion to strike complaint alleging negligent training of police officers regarding high speed chases because such action is clearly discretionary and protected by governmental immunity); *Doe v. Nunes*, 1995 WL 137143 (Conn.Super) (granting motion to strike complaint alleging negligent hiring, supervising and firing of officer because such actions are discretionary duties protected by governmental immunity); *Coletosh v. City of Hartford*, 1999 WL 259656 (Conn.Super.) (case alleging excessive force on the part of the Hartford police officers, instructing, supervising, controlling and disciplining police officers were discretionary acts); *Cook v. City of Hartford*, 7 Conn.L.Rptr. 270, 1992 WL 220201 (1992) ("The act of training and supervising police officers is clearly a discretionary function.  Consideration of who to hire, how to train such people, and how to supervise police officers on the job are decisions requiring the use of judgment and discretion.  A municipality cannot employ a standard list of actions which must be taken in utilizing its police department.").

United States Magistrate Judge Joan Margolis recently acknowledged these principles and case law in *Willoughby v. Peterson*, 2012 WL 3726532 (attached hereto and marked as Exhibit), in holding that the defendants in that case were entitled to summary judgment on the issue of governmental immunity.    All of the plaintiffs' allegations relate to conduct requiring discretion on the part of the individual defendants, thus entitling each and the Mystic Fire District to governmental immunity.

**C. THE OFFICER/BOARD MEMBER DEFENDANTS DID NOT KNOW, OR HAVE ANY REASON TO KNOW OF DEFENDANT WILLIAM CELTRUDA'S ALLEGED PROPENSITY TO COMMIT ARSON AND THEREFORE CANNOT BE HELD RESPONSIBLE FOR CELTRUDA'S CRIMINAL ACTS.**

Counts 1, 3, 5, 7, 9 and 11 are directed against the Officer/Director defendants Richard Wilkens, Fire Chief Frank Hilbert, Captain Christopher May, Assistant Fire Chief Anthony Manfredi, Jr, Treasure John Kennedy and First Lieutenant Kyle Hilbert and contain, under subparagraph (d) of each count, allegations that the defendants failed to "establish and implement proper procedures to psychologically screen prospective firefighters." These counts also contain allegations that the defendants failed to properly train and supervise, as well as establish and enforce policies related to firefighting, alcohol consumption, and the hazing and mistreatment of probationary firefighters. See, ¶ 35, subparagraphs a, b, c and f.

The *sine qua non* in all negligence claims is the existence of a duty. *Sturm v. Harb Dev.*, LLC, 298 Conn. 124, 139-40 (2010). In circumstances like this case, where plaintiffs seek damages against defendants based on the criminal conduct of a third party, Connecticut law imposes liability on such defendants in only limited circumstances. Connecticut law recognizes a duty an employer has in the selecting of employees; *Shore v. Stonington*, 187 Conn. 147, 155-56 (1982); as well as in the supervision of those it hires. *Roberts v. Circuit-Wise, Inc.*, 142 F.Sup.2d 211, 214 (D. Conn. 2001). In both, a defendant does not owe a duty of care to protect to protect a plaintiff from another employee's tortious acts unless the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortious

conduct.[6]  *Shanks v. Walker*, 116 F. Supp. 2d 311, 314 (D. Conn. 2000); *Green v. Cheshire Acad.*, 2004 Conn. Super. LEXIS 2892, *6-*7 (Super.Ct. 2004) (school liable for assault and battery by fellow student if school "knew or should have known about the dangerous tendencies" of the other student); *Companions & Homemakers, Inc. v. Pogasnik*, Superior Court, judicial district of Hartford at Hartford, Docket No. CV 04 0834592 (June 7, 2005, Wagner, J.T.R.) ("Nearly all the Superior Court decisions. . . have required the plaintiff in a negligent supervision action to plead and prove injury by the defendant's negligence in failing to properly supervise an employee who the defendant had a duty to supervise and who the defendant knew or should have known would cause the injury.").

No member of the B.F. Hoxie Engine Company No. 1 had ever previously been accused or suspected of committing arson.   F. Hilbert Affidavit, **Exhibit B**, ¶ 12. Moreover, there is simply no duty on the part of the Mystic Fire District or B.F. Hoxie Company to conduct psychological screening of applicants seeking membership in the fire departments within the Mystic Fire District.    Indeed, the idea of psychologically screening candidates raises a host of privacy issues, as well as potential liability for

---

[6] Similarly, all of the defendants are entitled to judgment as a matter of law on the basis that the proximate cause of the plaintiffs' losses is the intentional, criminal act of defendant William Celtruda. In this regard, Connecticut law adheres to the scope of the risk analysis of proximate cause as set forth in 2 Restatement (Second) Torts §442B (1965), which states as follows: "Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, *except where the harm is intentionally caused by a third party and is not within the scope of the risk created by the actor's conduct.*" (emphasis added.). *See also*, *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 307 (1997). Here, there is no doubt that the plaintiffs' losses and damages were caused by the intentional, criminal conduct of defendant William Celtruda.   In addition, none of the conduct of the defendants as alleged by the plaintiff – even assumed as true – can be said to be within the scope of the risk created by the defendants' alleged conduct.    While questions of proximate causation are usually left to the trier of fact, the issue of proximate cause becomes one for the court to decide when "the mind of a fair and reasonable person could reach only one conclusion . . . " Id., at pg. 307. This is one of those cases.

claims of discrimination.      B. F. Hoxie Company selects members based on the recommendations of existing members and, once admitted, the new member is placed on probationary status while he or she completes Firefighter 1 training at the State Fire Academy.  <u>Affidavit of C. May</u>, **Exhibit C**, ¶ D.

Here, there is absolute no evidence that the defendants knew or should have known about defendants' alleged propensity to commit arson.     All of the defendants have averred in affidavits that each had no reason to know that Mr. Celtruda was going to commit arson at any time.   These defendants have also averred that Mr. Celtruda never gave them any indication, in word or deed, that he intended on setting structures on fire. Because none of the defendants knew or should have known of Celtruda's intentions, none can be held liable for his tortious/criminal conduct.

**D.   <u>WILLFUL AND WANTON CLAIMS AGAINST FIRE HOUSE DEFENDANTS</u>**

Defendants Hilbert, Allyn, Molkenthin and Paige are entitled to judgment as a matter of law on the plaintiffs' claims in Counts 13, 16, 19 and 22).

Under Connecticut law, a "specific allegation setting out the conduct that is claimed to be reckless and wanton must be made." <u>Dumond v. Denehy</u>, 145 Conn. 88, 91 (1958). "Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . Willful, wanton and reckless conduct tends to take on the aspect of highly unreasonable conduct, involving extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . It is clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience,

excitement, or confusion, and more than mere thoughtlessness or inadvertence or simply inattention." *Craig v. Driscoll*, 262 Conn. 312, 343-43 (2003) (internal quotation marks omitted).   The mere labeling of negligent conduct as "reckless" is insufficient. *Angiolillo v. Buckmiller*, 102 Conn.App. 698, 705 (2007).

In the wanton and reckless counts (Counts 13, 16, 19 and 22 against K. Hilbert, Allyn, Molkenthin and Paige), Plaintiff alleges that the Volunteer Firemen defendants:

> e.   Failed to prevent the consumption of beverage alcohol by firefighters while on duty and consumed beverage alcohol to the point of becoming intoxicated when they knew or should have known said consumption would result in diminished judgment in violation of fire house rules and policies and procedures, as well as NFPA 1500 and/or NFPA 1500 Section 10.1.5;
> f.   Furnished beverage alcohol to the defendant William Celtruda while on duty causing him to become intoxicated resulting in the loss of his judgment when they knew Celtruda desired to fight a structural fire, all in violation of the above rules, policies and procedures
> g.   Failed to prevent the hazing, mistreatment and/or taunting of Celtruda when they knew Celtruda wanted to fight a structural fire and participated in starting a fire that night at the fire house in violation of the policies and procedures above;
> h.   Permitted and/or required Celtruda to leave the fire station in a drunken condition when they knew or should have known the Celtruda's judgment was impaired and he wanted to fight a structural fire.

Preliminarily, defendants Allyn, Molkenthin and Paige did not consume alcohol in the fire station.  Affidavit of Brian Molkenthin, ¶ 8, **Exhibit E**; Affidavit of Nickolas Allyn, ¶ 7, **Exhibit F**; Affidavit of Christopher Paige, ¶ 8, **Exhibit H**.   In addition, Mr. Celtruda never indicated to any of the defendants, in word or deed, that he intended on setting a structure(s) on fire at any time and none of the defendants had any reason to believe that Celtruda would at any time commit arson.    Affidavit of Brian Molkenthin, ¶ 14, attached hereto and marked as **Exhibit E**; Affidavit of Nickolas Allyn, ¶ 10, attached hereto and marked as **Exhibit F**; Affidavit of Kyle Hilbert, ¶ 17, attached hereto and

marked as **Exhibit G**; Affidavit of Christopher Paige, ¶ 11, attached hereto and marked as **Exhibit H**.

In addition, none of these defendants ever teased or taunted or "hazed" defendant Celtruda concerning his inexperience or his never having fought a real fire. Affidavit of Brian Molkenthin, ¶ 12, attached hereto and marked as **Exhibit E**; Affidavit of Nickolas Allyn, ¶ 8, attached hereto and marked as **Exhibit F**; Affidavit of Christopher Paige, ¶ 9, attached hereto and marked as **Exhibit H**; ; Affidavit of Kyle Hilbert, ¶ 15.

Under these circumstances[7], the defendants cannot be said to have engaged in conduct that reaches the appropriately high threshold of "wanton and reckless" conduct. While one defendant, Kyle Hilbert, violated the bylaws of B.F. Hoxie Engine Company, as well as the fire house's rules, by engaging in underage drinking with a probationary firefighter, this conduct is at best a lapse of judgment.   No one at the station knew, or should have known, that William Celtruda allegedly wanted to fight a structural fire. Evening assuming knowledge that Celtruda wanted to fight a structural fire, no one at the station knew or could have known that Celtruda's desire to fight a structural fire, combined with his alleged intoxication, would result in his decision to commit a crime.

No one except William Celtruda knew that after leaving the fire house he would make the decision to commit arson.   Absent that knowledge, the defendants cannot have acted in a "willful and wanton" manner under Connecticut law.

---

[7] Indeed, Mr. William Celtruda has testified in a sworn deposition that he takes full responsibility for setting the fires, does not blame any firefighters at B.F. Hoxie Station, and that he takes full responsibility for setting the fires. Deposition of William Celtruda, at pg. 55 (Lines 19-25) and 56 (1-24), attached hereto and marked as **Exhibit J**.

E. **COUNTS 27 and 28 AGAINST THE MYSTIC FIRE DISTRICT SEEK INDEMNIFICATION ONLY AND ARE PREDICATED ON A FINDING OF NEGLIGENCE AGAINST THE INDIVIDUAL DEFENDANTS AND DO NOT STATE INDEPENDENT CAUSES OF ACTION AGAINST THE MYSTIC FIRE DISTRICT.**

In Counts 27 and 28, plaintiffs seek indemnification from the Mystic Fire District for the conduct of the District's individual defendants under General Statutes §7-308 and §7-465.   These statutes are municipal indemnification statutes under which the municipality does not assume liability in the first instance.  *Fraser v. Henninger*, 173 Conn. 52, 56 (1977).   In other words, municipal liability under either of these statutes must be predicated on findings of individual negligence on the part of the municipal employee or, in this case, the volunteers or Fire Officers/Board Members.  *Tryon v. North Branford*, 58 Conn. App. 702, 718 (2000).   If the District Court grants the individual defendants' Motion for Summary Judgment, Counts 27 and 28 become moot.

F. **THE MYSTIC FIRE DISTRICT IS ENTITLED TO GOVERNMENTAL IMMUNITY UNDER GENERAL STATUTES 52-572n**

Count 26 seeks to impose liability against the Mystic Fire District under General Statutes §52-572n.  General Statutes §52-572n codifies, in part, common law principles of governmental immunity for municipalities, limiting such liability to ministerial acts of employees.  *Elliot v. Waterbury*, 245 Conn. 385, 411 (1998).   As set forth above, defendant Mystic Fire District is entitled to governmental immunity because the because the allegations concerning the hiring, training, supervising and promulgating and enforcing policies within a fire department are, as a matter of law, discretionary acts. *Hughes v. City of Hartford*, 96 F.Supp.2d 114 (2000) (police department).

## G.  CONCLUSION

For all the foregoing reasons, the defendants respectfully request the court enter judgment as a matter of law on all counts directed against these defendants' in the plaintiffs' July 16, 2009 Complaint.

THE DEFENDANTS,

BY:_____

Michael C. Deakin, Esquire
Fed. Bar I.D. CT15376
DEAKIN EDWARDS & CLARK, LLP
245 Amity Road, Suite 200
Woodbridge, CT  06525
Phone:  (203) 387-5100
Fax:  (203) 387-5101
mdealin@decllp.com

**CERTIFICATION**

I hereby certify that on September 4, 2012 a copy of the foregoing was filed electronically and served on any person unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the court's electronic filing system or by mail to any person unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

John Carta, Esq.
31 North Main Street
Essex, CT  06426
(E-mail: john@cartalaw.com)

William A. Celtruda
Inmate No.: 361946, Corrigan-Radgowski Correctional Center
986 Norwich-New London Tpke
Uncasville, CT 06382

Sean Donlan, Esq.
222 Old Boston Post Road
Old Saybrook, CT 06475
(Email: seand2404@yahoo.com)

Eugene Cushman, Esq.
One Post Hill Place
New London, CT 06320
(Email:  arco.corp@snet.net)


_____
Michael C. Deakin, Esquire