**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ULTEGRA, LLC and
GRETCHEN CHIPPERINI                  :
           Plaintiff          :          CIVIL ACTION NO.
                      :          3:09-CV-1284 (MRK)
VS.                                  :
                      :
                      :
MYSTIC FIRE DISTRICT,                :
CHRISTOPHER WILKINS, FRANK           :
C. HILBERT, ANTHONY P.               :
MANFREDI, JR., CHRISTOPHER           :
MAY, JOHN H. KENNEDY, KYLE           :
HILBERT, CHRIS PAIGE, BRIAN          :
MOLKENTHIN, NICK ALLYN and           :
WILLIAM CELTRUDA, et al.             :
           Defendants         :          OCTOBER 12, 2012

**MEMORANDUM OF LAW IN OPPOSITION**
**TO MOTION FOR SUMMARY JUDGMENT OF**
**DEFENDANT MYSTIC FIRE DISTRICT, ET AL**

      Pursuant to Fed. Rule of Civil Procedure 56 and Rule 56 of the local rules of Civil

Procedure for the District of Connecticut, the plaintiffs, Ultegra, LLC and Gretchen

Chipperini, respectfully submit the following Memorandum of Law, with attached

exhibits, in opposition to the defendants Motion for Summary Judgement.

I. <u>BACKGROUND</u>

The defendant, Mystic Fire District, is an independent fire district, authorized by a special act of the General Assembly (hereinafter after referred to as "MFD").  It is governed by a three (3) person Executive Committee.  Its geographical area covers parts of the Town of Groton and part of the Town of Stonington.  It operates separately from and independently of both towns.  Neither town has any operational control or authority over the fire district, its officers or its members.  The fire district has no legislative or other governmental function.  The fire district owns and operates its own station facilities and equipment, and selects and controls its own officers and members. One of the fire stations owned, operated and controlled by the MFD is the B.F. Hoxie Engine Company (hereinafter referred to as "Hoxie").  The defendant, Frank C. Hilbert, is the Chief of the MFD.  The defendant, Anthony Manfredi, is the Assistant Chief of the MFD.  The defendant, Christopher May, is the ranking officer of Hoxie, holding the rank of Captain.  The defendant, Kyle Hilbert, at all pertinent times, was first lieutenant, the second ranking officer at Hoxie (and nephew of Chief Frank Hilbert).  The defendant, Nicholas Allyn, was one of two second lieutenants at Hoxie.  The defendant, Brian Molkenthin, was Hoxie's company steward.  The defendant, William Celtruda, was a novice, probationary member of Hoxie, having been voted into membership by Hoxie

on May 6, 2008, on recommendation of his uncle, Dominic Celtruda, and his grandfather, Rocco Celtruda.  Dominic Celtruda was appointed by Captain May to sit on the "Investigating Committee" which was charged with investigating William Celtruda's qualifications and worthiness as a member of Hoxie.

On July 24 and 25, 2008, First Lieutenant Kyle Hilbert and probationary member William Celtruda became intoxicated at Hoxie and thereafter between the hours of 4 a.m. and 5 a.m. on July 25th, William Celtruda, set fire to the house at 23 Library Street, Mystic, Connecticut, belonging to the plaintiffs, Gretchen Chipperini, and her limited liability company, Ultegra, LLC (Inga Chipperini, mother of Gretchen Chipperini was an owner of the real property at that time, but is now deceased and her interest has passed to Gretchen Chipperini)

**A:  DISPUTED ISSUES OF MATERIAL FACTS**

**Disputed Issue of Material Fact 1**

**Mystic Fire District is not a municipality, or state entity which is entitled to government immunity, sovereign immunity, or the Public Duty Doctrine.**

Supporting Facts:

a.  Mystic Fire District is not contained within the geographical boundary lines of any one municipality.  (Affidavit of William Johnson)

b.   The Mystic Fire District Committee is not appointed by, nor controlled by the Town of Groton or the Town of Stonington.  (Affidavit of William Johnson and George R. Sylvestre)

c.   Neither the Town of Groton nor the Town of Stonington hires or employs any member of the Mystic Fire District or its volunteer fire companies, nor controls any of its operations or functions (Affidavit of William Johnson)

d.   The Mystic Fire District has no legislative function.  (Affidavit of William Johnson)

e.   Neither the Town of Groton nor the Town of Stonington finances any of the operations of the Mystic Fire District or its volunteer fire companies.  (Affidavit of William Johnson)

f.   The Hoxie Engine Company is a corporation wholly owned and operated by the Mystic Fire District.  (Defendants' Local Rule 56 Statement, #4 and #5)

g.   Elections for the Mystic fire District Executive committee are not conducted on the same date or time as municipal elections are held, and the constituency is unique to the district, and not compatible with the voting list of any municipality.  (Affidavit of William Johnson)

4

h.  No municipality selects, controls, trains, or disciplines any officer or member of the MFD.  (Affidavit of William Johnson)

<u>Supporting Law</u>:

1.  "The public duty doctrine is governmental in nature.  Only governmental officers or entities, not private individuals or companies have asserted the public duty doctrine as a defense in Connecticut."  *Gordon v Bridgeport Housing Authority*, 208 Conn. 161, 169; *Roman v Stamford*, 16 Conn. App. 213

2.  "Whether the acts complained of ... were governmental or ministerial is a factual question which depends upon the nature or the act complained of" *Gauvin v. New Haven,* 187 Conn. 180, 196 445 A.2d1 (1982)

3. "Where ... <u>the government creates</u> a corporation by special law, for furtherance of governmental objective, and <u>retains for itself permanent authority</u> to appoint a majority of the directors of that corporation, the corporation is a part of the government for purposes of the first amendment" (emphasis added) *Lebran v National RR Passenger Corp*, 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed. 2d. 902 (1995) The MFD is not a governmental entity, since it was not created by the government nor controlled by the government.

5

**Disputed Issue of Material Fact 2**

**The process of admitting William Celtruda as a probationary member of the Hoxie Engine Company was an administrative procedure, not a discretionary function.**

Supporting Facts:

The Hoxie Engine Company By-laws state at Article 9, Section 1:

"An investigating Committee of three active members shall be appointed by the Captain.  It shall be the duty of the Investigating Committee to inquire, rigidly into the character and competency of the candidate for membership referred to them and to report in writing on the name submitted, using only the term favorable or unfavorable as the case may be.

Supporting Law:

1.  "A ministerial act is an act which is performed in a prescribed manner without the exercise of Judgment or discretion" *Heigl v New Canaan*, 218 Conn. 1, 5, 587 A.2d 423 (1991)   "That is there must be a written policy, directive or guidelines mandating a particular course of action" *Bradshaw v. Glastonbury*, Superior Court, Judicial District of Hartford, Docket No. CV 09-5032294 (Dec. 7, 2010, Peck J.)

2.  "A right is clearly established if the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right"

6

*Anderson v Creighton*, 482 U.S. 635, 640, 107 S.Ct. 3034, 97 L. Ed. 2d 523 (1987)

**Disputed Issue of Material Fact 3**

**The individual Defendant, Captain May acted willfully and recklessly in:**
**a.  appointing Dominic Celtruda to the Investigating Committee, and failing to appoint a third member to the Investigation Committee; and,**
**b.  not inquiring about or disregarding William Celtruda's troubled history; and,**
**c.  not requiring that the "Investigating Committee" perform its prescribed function, thereby exposing the plaintiffs to their injury.**

Supporting Facts:

a.  Dominic Celtruda and Rocco Celtruda recommended William Celtruda for membership as a firefighter in Hoxie.

b.  Captain May had actual knowledge that Rocco Celtruda was the grandfather of William Celtruda and Dominic Celtruda was William's uncle.  He knew or should have known that Dominic Celtruda and would not be an impartial investigator when he appointed Dominic Celtruda to the Investigating Committee.  (Affidavit of Captain May)

c.  Captain May was either told by Rocco Celtruda or Dominic Celtruda of William Celtruda's troubled history or failed to inquire of either Rocco or Dominic Celtruda if William Celtruda had a troubled history (Affidavit of Captain May)

d.  Captain May engaged in cronyism and nepotism, contrary to his fiduciary

7

duty, in appointing a known relative to the Investigating Committee.  (Affidavit of Captain May)

e.  Captain May failed to appoint the required number of members to the Investigation Committee and failed to require the Investigating Committee to actually investigate and make a report in writing.  (Deposition of Captain May)

Supporting Law:

1.  "At common law, so long as the plaintiff's category is foreseeable there is no requirement that the risk of injury to the plaintiff and the risk of the harm that actually occurred, were what made the defendant's action wrongful in the first place" *Abrahams v. Young & Rubicam, Inc.*, 79 F.3d 234, 237 (2d Cir.), cert. Denied, 519 U.S. 816, 117 S. Ct. 66, 136 L. Ed. 2d 27 (1996)

2.  "The extent to which a criminal act was reasonably foreseeable to a particular plaintiff in any given case is a question of facts and circumstances" *Monk v Temple George Associates, LLC,* 273 Conn. 108, 114-15, 869 A. 2d 179 (2005)

3.  "The ultimate test of the existence of duty to use care is found in the forseeability that harm may result if it is not exercised ... by that is not meant that one charged with negligence must be found actually to have foreseen the probability of

harm or that particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, know what he knows or should know, anticipate that harm of the general nature of that suffered was likely to result?  *Lombard v Peters*, *PC*, 252 Conn. 623 632-22, 749 A.2d 630 (2000)

4.  "Wanton misconduct is more than negligence, more than gross negligence.  It is such conduct as indicates a reckless disregard of the just rights or safety or others or of the consequences of actions."  *Menzi v. Kalvonowitz*, 107 Conn 197, 1999 (1928)

5.  "Recklessness is a state of consciousness with reference to the consequences of one's acts ... it is more than negligence, more than gross negligence...the state of mind amounting to recklessness may be inferred from conduct...it is such conduct as indicates a reckless disregard of the rights or safety of others or the consequences of the action" *Dubay v Irish*, 207 Conn 518, 532 (1988)

6.  "Whether the plaintiff[s] were foreseeable victim is a question of fact.  This issue must be determined by the fact finder" *Fraser v United States*, 236 Conn 625, 646 (Berdon, Jr., dissenting)

**Disputed Issue of Material Fact 4**

**The Hoxie Engine Company, Chief Hilbert, and Captain May acted willfully and recklessly in allowing an immature and unqualified member to become an officer**

9

**and supervisor of the Hoxie Engine Company**

<u>Supporting Facts</u>:

a.  First Lieutenant Kyle Hilbert was age 19 on July 24 and July 25, 2008. (Deposition of K. Hilbert)

b.  Kyle Hilbert became a member of Hoxie on his 16th birthday.  (Deposition of K. Hilbert)

c.  Kyle Hilbert was made First Lieutenant in January of 2008.  (Deposition of K. Hilbert)

d.  In January 2008, Kyle Hilbert had prior fire fighting experience of less than four (4) years.  (Deposition of K. Hilbert)

e.  Article 3, Section 2 (c)(2) of the B.F. Hoxie Engine Company By-Laws states:

"Line officers shall have prior firefighting experience as an active member of the volunteer company or as a professional fire fighter as follows: (2) First Lieutenant - four (4) years.

f.  On the evening of July 14, 2008 and the morning of July 25, 2008 First Lieutenant Kyle Hilbert was in command of the Hoxie Engine Company, and was the supervisor of William Hilbert.  (Deposition of K. Hilbert)

10

g.  Kyle Hilbert is the nephew of Chief Frank Hilbert.  (Deposition of K. Hilbert)

h.  See also supporting facts for issue of material facts 3, which are incorporated herein to support this issue..

Supporting Law:

1.  "The fact finder is free to determine which version of the events in question it finds most credible" *Fink v. Golenbock*, 238 Conn. 183, 210, 680 A.2d 1243 (1996)

2.  "The test for cause in fact is simply, would the injury have occurred were it not for the actor's conduct ... the test of proximate cause is whether the defendant's conduct is a substantial factor in producing plaintiff's injury" *Craig v Driscoll*, 262 Conn. 312, 331, 813 A.2d 1003 (2003)

**Disputed Issue of Material Fact 5**

**On July 24, 2008 and on July 25, 2008 First Lieutenant Kyle Hilbert, while in charge of the fire station, and while in the supervisory capacity of William Celtruda committed acts, which would shock the contemporary conscious of any reasonable person and juror, and therefore such acts were a substantial factor in the cause of plaintiffs' injury.**

Supporting Facts:

a.  The Hoxie Engine Company maintained a keg of beer in an unlocked refrigerator in the kitchen of the Hoxie Fire House.  (Deposition of K. Hilbert)

11

b.  First Lieutenant Kyle Hilbert knew he was not old enough to legally drink alcohol in the State of Connecticut on July 24, 2008.  (Deposition of K. Hilbert)

c.  Steward Brian Molkenthin was custodian of the beer keg and charged with maintaining the kitchen and company property.  He was present in the Hoxie Fire Company on July 24 and July 25, 2008.  (Deposition of Molkenthin)

d.  The keg of beer was ostensibly used for making beer batter for "Fish Fry" night, a fund raising event conducted for the benefit of the Hoxie Engine Company. (Deposition of Hilbert)

e.  First Lieutenant Kyle Hilbert knew that the Hoxie Company house rules did not permit either under aged drinking or any alcohol consumption by any member unless at an authorized event.  (Deposition of Captain May and Deposition of Kyle Hilbert))

f.  Despite such laws, rules and restrictions, First Lieutenant Kyle Hilbert never the less, commenced drinking beer from the Hoxie Company beer keg, in the presence of William Celtruda and Chris Paige.  (Affidavit of K. Hilbert and Police Statement of Chris Paige)

g.  First Lieutenant Kyle Hilbert openly commenced pilfering Hoxie Company

12

beer without concern that any other member present (including Steward Molkenthin) would raise an issue or objection with him for doing so, nor did anyone present in the fire house that evening, in fact, object or treat his pilfering of beer as something wrong or unusual.  (Note the absence in all affidavits and  depositions of any officer or member of the Mystic Fire District or the Hoxie Engine Company stating that K. Hilbert's pilfering of beer or state of intoxication was a concern or an act out of the ordinary).

h.  While in a sober condition, First Lieutenant Hilbert invited, condoned or allowed his trainee, probational member William Celtruda to also pilfer the Hoxie Engine Company beer, thereafter while intoxicated, First Lieutenant Hilbert allowed Celtruda to consume and become intoxicated on Hoxie Engine Company beer, in his presence, in the Hoxie Engine Company Fire House, over an extended period of time, to the point that Celtruda would subsequently blame his wrongful conduct on his severely intoxicated state.  (Depositions of Hilbert and Celtruda)

i.  Although Chris Paige did not, himself, join First Lieutenant Hilbert in consumption of Hoxie Engine Company beer, he was aware of the fact that Hoxie Company beer was being consumed by First Lieutenant Hilbert when he went to bed on the second floor of the firehouse where Second Lieutenant Allyn and Steward

13

Molkenthin were located.  He either failed to report this breach of rules to his supervisors, or he reported it, and the superiors took no corrective action.  (Police Statement of Christopher Paige)

j.  Both First Lieutenant Hilbert and Trainee Celtruda became intoxicated from drinking Hoxie Engine Company beer to the point that they engaged in rambunctious and boisterous behavior culminating in First Lieutenant Hilbert jumping on the fire house kitchen table and breaking it.  (Deposition of Celtruda)

k.  First Lieutenant Hilbert and his trainee, Celtruda then dragged the broken kitchen table out of the firehouse to a parking lot in the rear of the fire house. (Deposition of Hilbert)

l.  First Lieutenant Hilbert, while intoxicated, took from the Hoxie Engine Company storage locker certain containers of fire accelerant chemicals, including acetone.  (Police Statement of Hilbert)

m.  First Lieutenant Hilbert with the assistance of Trainee Celtruda then using the fire accelerants, commenced setting the Hoxie Engine Company property, i.e., the kitchen table, on fire.  (Deposition of Hilbert & Celtruda)

n.  For approximately an hour, while watching the table burn, First Lieutenant

14

Hilbert and his novice trainee companionably spoke of First Lieutenant Hilbert's firefighting exploits and trainee Celtruda's lack of such exploits.  (Deposition of Hilbert)

o.  During that discourse Trainee Celtruda offered the sentiment regarding structural fires: "How cool it would be to have a fire".  First Lieutenant Hilbert demurred only because the rules prohibited them from engaging in fighting a fire while intoxicated. (Police statement by Hilbert) (Deposition of Hilbert)

p.  Upon perceiving that their kitchen table pyrolysis may be discovered by an occupant of an approaching automobile (in a neighboring parking lot), Hilbert and Celtruda hastily extinguished the table fire.  (Police Statement by Hilbert and Deposition of Hilbert)

q.  First Lieutenant Hilbert then, using a Hoxie Engine Company power saw, cut the remnants of the kitchen table into pieces and discarded the evidence of the illicit fire in the Hoxie trash dumpster.  (Deposition of Hilbert)

r.  Although both First Lieutenant Hilbert and probationary member Celtruda admit to still having been intoxicated; and although the Hoxie bunk room rules prohibit use of the bunk room while intoxicated, both Hilbert and Celtruda then proceeded to the bunk room intending to sleep there.  (Deposition of Hilbert and Celtruda and Police

15

Statement by Paige)

  s.  Both First Lieutenant Hilbert and probationary member Celtruda entered the bunk room at approximately 4 a.m. on July 25, 2008, in such a boisterous manner that all members of the Hoxie Engine company who were then utilizing the bunk room that night were awakened by the rambunctious behavior of these two.  (Depositions of Allyn, Molkenthin and Hilbert and Police Statement by Paige)

  t.  Probational member Celtruda was ordered by Steward Molkenthin to leave the bunk room, not because of his obvious intoxicated state, but because he was disturbing Molkenthin's folded laundry on a bunk which Celtruda was attempting to use. (Deposition of Molkenthin)

  u.   No officer or supervisor present in the Hoxie Engine Company firehouse at 4 a.m. on July 25, 2008, by word or deed prevented the intoxicated Celtruda from leaving the firehouse when or after he was ordered out of the bunk room.  No one checked to see where he subsequently went.  (Deposition of Celtruda)

  v.  No officer or supervisor present in the firehouse, at that time, questioned the fact that First Lieutenant's had become intoxicated in the fire house nor did they prevent First Lieutenant Hilbert from utilizing the bunk room, while he was intoxicated, or

16

prevent First Lieutenant Hilbert from operating a Hoxie vehicle, one hour later, or

prevent him from partaking in a structural fire fight while still intoxicated.

Supporting Law:

    1.  A supervisor's "personal involvement" may be established by evidence the supervisor "failed to take corrective action after learning of a subordinate's unlawful conduct.  2)  Creation of a policy or custom fostering unlawful conduct.  3)  Gross negligence in supervising subordinates who commit unlawful acts or  4)  Deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates" *Havut v State Univ. Of New York*, 352 F.3d 733, 753 (2d Cir. 2003)

    2.  "Legal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation.  The first component of legal cause is causation in fact" *Malloy v Colchester*, 85 Conn. App. 627, 633, 858 A.2d 813 Cert. Denied, 272 Conn. 907, 863 A.2d 698 (2004)

    The second component of causation is "Proximate cause [which is] defined as an actual cause that is <u>a substantial factor in the resulting harm</u> ... the 'test' for proximate cause is whether the defendant's conduct was a 'substantial factor' in producing the plaintiff's injury.  This substantial factor test reflects the inquiry fundamental to all proximate cause questions ... the questions of proximate causation generally belongs to the trier of fact because causation is essentially a factual issue ... it becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier of a matter of fact" *Label System Corp v. Aghamdrammadi*, 270 Conn. 291, 321-22, 852 A.2d 703 (2004) (emphasis added)

**Disputed Issue of Material Fact 6**

**Mystic Fire District and Hoxie Engine Company officers and members and the individual defendant played a substantial role, and had "personal involvement" in**

17

**the events which led to Celtruda's wrongful act.**

Supporting Facts:

    a.  Captain May failed to appoint an impartial panel to the Investigation Committee, and failed to appoint a full compliment of three members to that committee, he also failed to conduct an impartial and adequate investigation into Celtruda's background, thereby allowing an unworthy person to become a member of the Hoxie Engine Company.  (Deposition of Captain May)

    b.  Captain May failed to convey information concerning William Celtruda's addiction problems to other officers or members of the Hoxie Engine Company, thereby failing to communicate significant information to other officers of the Hoxie Engine Company which would have or should have prevented First Lieutenant Hilbert from allowing Celtruda to drink from the company beer keg.  (Deposition of Captain May and First Lieutenant Hilbert)

    c.  First Lieutenant Hilbert engaged in numerous inappropriate activities that are set forth in Disputed Material Fact 5 above, and which immediately preceded and contributed to Hilbert's wrongful conduct, which activities a fair and reasonable person could find shock the conscience.

18

d.  Chris Paige failed to report to Second Lieutenant Allyn and Steward Molkenthin wrongful behavior on the part of First Lieutenant Hilbert and probationary member Celtruda, or if he reported such activity, Second Lieutenant Allyn or Steward Molkenthin failed to act on such report.  Either way, a jury could reasonably find, had he done so or the officer had acted upon the report it would have prevented Celtruda's later activities.  (Deposition of Paige)

e.  Allyn, Molkenthin, Paige and Hilbert engaged in activities which a jury could reasonably find amounted to taunting, teasing or hazing the rookie Celtruda.   (See reference in plaintiff's Rule 56 Statement)

f.  Allyn and Molkenthin allowed First Lieutenant Hilbert to use the bunk room while in an intoxicated state, while at the same time ordering Celtruda to leave, on his own, and they did nothing to prevent Celtruda from leaving the firehouse although they knew he was intoxicated.  Further, Allyn and Molkenthin not only allowed First Lieutenant Hilbert to remain in the bunk room in an intoxicated condition, but later, to operate a Hoxie Engine Company fire vehicle, although they knew or should have known he was in an intoxicated condition.  (Deposition of Allyn and Molkenthin, Police Statement of Paige and Deposition of Celtruda)

19

g.  William Celtruda's intoxicated condition was a substantial factor in his wrongful decision to set fire to 23 Library Street, Mystic, Connecticut.  Such intoxicated condition was enabled and fostered by First Lieutenant Hilbert, who allowed Celtruda to drink Hoxie Engine Company beer far in excess of reasonableness.  (Depositions of Hilbert and Celtruda)

Supporting Law:

1.  "We do not wish to be understood as questioning the general proposition that no responsibility for a wrong attached whenever an independent act of a third party intervened between the negligence complained of and the injury, but ... this proposition does not apply where the very negligence alleged consists of exposing the injured party to the act causing the injury" *Hines v Garrett*, 108 SE 690, 695 (1921)

2.  Section 19 of Restatement of Torts (Third) Liability, states: "the conduct of a defendant can lack reasonable care insofar as it foreseeably combines with or permits the improper conduct of a ... third party"

**Disputed Issue of Material Fact 7**

**The plaintiffs as members of the Mystic Fire District, are in an identified class of victims, they have a special relationship with the Mystic Fire District, in that the Mystic Fire District and the Hoxie Engine Company have a specific, express purpose of providing a service to an identified group of property owners, who are**

20

**members of the Mystic Fire District.  Such purpose and service is not directed at the general public or to all citizens of the towns of Stonington and Groton, but specifically to members of the district.  Plaintiffs as members of the Mystic Fire District, pay the Mystic Fire District and the Hoxie Engine Company to perform this service.**

Supporting Facts:

a.  B.F. Hoxie Engine Company by-Laws, Section 3 states: "The purpose of this

Corporation is to help save and preserve the life and property of the members of this

community and surrounding fire districts by giving its members a degree of security

from the destruction and loss due to the ravages of fire ..."

b.  the Mystic Fire District is a separate entity, district and independent of both

municipalities of Groton and Stonington.  (Affidavits of Johnson and Sylvestre)

**Disputed Issue of Material Fact 8**

**The Mystic Fire District is a separate and distinct entity not controlled by any municipality and operates completely independently of any municipal direction or reporting requirements.  Accordingly, the Mystic Fire District, is not entitled to claim sovereign immunity and is statutorily liable to the plaintiffs herein pursuant to CGS § 7-308.**

Supporting Facts and Law:

a.  CGS §7-308 incorporates the definition of "municipality" which is contained in

CGS §7-314.

21

 b.  CGS § 7-314 provides in part as follows: "...the word 'municipality' includes each town, ... fire district, upon which is placed the duty of, or which has itself assumed the duty of, protecting its inhavitants from loss by fire ..."

 c.  CGS § 7-308 places upon the Mystic Fire District (a municipality for purposes of this section) responsibility for damages as a result of liability imposed upon its members by law.

 d.  In no other statute is "municipality" defined by including the words "fire district".

 e.  In *Hunter v LaJoie*, 37 Conn.L.Rptr 439 (July 7, 2004) Judge Blue held the acts of a volunteer firefighter fell under the provisions of CGS §7-308, thereby making the fire district liable, but not the municipality of Prospect, because the volunteer firefighter "was not a firefighter 'of' the town; he was, instead, a firefighter 'of' the VFDP (Volunteer Fire Department of Prospect).

 f.  Judge Corradino, in *Hansen v. Mohegan Fire Company, Inc.*, CV96-0111388 (Oct 1, 2001) cited McQuillan, Municipal Corporations, 1993 Revised Edition, Section 53.05, in Volume 18 at page 188, et seq. As follows:

"In determining whether an entity is a governmental entity exempt from liability for tort claims, the court must look to see whether (1) the entity is created directly by the

22

state, so as to constitute a department or administrative arm of the government; or (2) whether the entity is administered by individuals who are controlled by public officials and are responsible to such officials or the general public"

Judge Corradino writing that he could not find a Connecticut Appellate Court decision on the issue looked to *Stacy v Tranmar Medical Center*, 836 S.W. 2d 911, wherein the court set forth three requirements for entities claiming sovereign immunity, and he then stated its "reasoning would apply to an entity claiming to be a quasi-municipal corporation. 'First, each entity must perform a service traditionally performed by the government ... second, and probably the most critical, requirement of entities entitled to sovereign immunity is that they are controlled by and directly answerable to one or more public officials ...'  Judge Corradino found, "if there is no control by the town over the entity ... the entity or its staff should not be able to claim immunity ... if control by the municipality were not to be a necessary requirement for immunity, then a whole host of charitable organizations performing public service work or even doing tasks the local governments also perform would be entitled to governmental immunity".

g.  Here, unquestionably, pursuant to the affidavits of William Johnson and George R. Sylvestre, the Mystic Fire District is a separate and distinct entity from either the Towns of Groton or Stonington.

h.  Since it is separate and distinct from either of said towns, the Mystic Fire District it is not entitled to the benefits of a sovereign immunity defense, but is still liable under CGS § 7-308.

i.  Plaintiffs herein are making no claims against the Towns of Groton or Stonington.

It should be noted that "traditionally" in Connecticut, fire protection has not been performed, as a governmental function, but by private volunteer engine companies.

**B: ARGUMENT**

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party ... the party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law."  *Cogan v. Manhattan Auto Financial Corp.*, 276 Conn. 1, 6, 882 A 2d. 597 (2005)

There are a substantial number of issues of material facts that are in dispute in this matter.

William Celtruda may have flicked the lighter which set the fire, but he never would have done so, or could have done so without the actions of the officers and members of the Mystic Fire District and the Hoxie Engine Company.  William Celtruda set the fire at 23 Library Street for the sole purpose of creating a circumstance wherein

24

he could engage in the professional art of fire suppression with his firefighting comrades.

But for the fact that William Celtruda was allowed to become a probationary member of the Hoxie Engine Company, through nepotism and the cavalier indifference to company by-laws, William Celtruda would have had no reason or desire to fight fires, nor would he have had access to the means to do so, or the comrades to impress, thus he would have had no motive to set the 23 Library Street fire.

Had the Hoxie Engine Company Captain appointed impartial members to a full three member Investigating Committee, rather than a family member, or had the Investigating Committee conducted a meaningful investigation, William Celtruda either would not have become a member, given his known background, or, his addiction problems would have or should have been known and therefore he would have been or should have been more carefully monitored by his supervisors.  He most certainly would not, or should not have been invited to join in the pilfering of Hoxie Engine Company beer had his supervisor been told of his addiction problems.

Likewise, the officers of the MFD and Hoxie Engine Company were equally cavalier and indifferent to company by-laws when they allowed the immature Kyle

25

Hilbert to become an officer, and supervisor without the prescribed qualifications or maturity.

A fair and reasonable person could easily find that Captain May and the Investigating Committee should have had a basic awareness of a rare, but real propensity for firemen to commit arson.

One does not have to be in the business of firefighting to know that an immature, drug and alcohol addicted, young man may present a risk of harm or danger to himself or others if placed in the high risk job of fire fighting.

One does not have to be in the business of firefighting to know that immature, troubled young firefighters are known to have set fires for the sole purpose of proving their firefighting virtuosity.  The fact that MFD officers have provided sworn affidavits that they knew of no such MFD firefighter who had been accused of arson is no more relevant evidence of innocence than the drunk driver who states he had never killed before while driving drunk.  Swearing to the fact that it may not have happened in the past does not excuse their indifference to the danger that it may, none the less, happen.

The failure to make the most cursory inquiry into William Celtruda's character or

26

worthiness, in defiance of Hoxie Engine Company by-laws, together with rampant nepotism in the selection of its membership and officers may go beyond mere negligence and a reasonable person could find it to be willful, reckless or gross misconduct.

Moreover, if it is true that William Celtruda's intoxication does not excuse him or his wrongdoing in setting the fire at 23 Library Street, it is equally true that that fact does not mean that his intoxication was not a substantial contributing factor in causing the harm done to the plaintiffs or that it excuses the other defendants in their role of allowing the intoxication to happen.

Indeed, although William Celtruda was a willing party to his own intoxication he would never have become intoxicated at the Hoxie fire station on July 24th and 25th had his supervisor and company first lieutenant not initiated and allowed the pilfering of Hoxie Engine Company beer.  Nor would he have become intoxicated to the extensive degree he did, had his supervisor not allowed it to happen, or if the other defendants had not been culpably oblivious to their duty to enforce the house rules.

Lieutenant Hilbert was not the only officer at Hoxie who had the authority to stop the exuberant drinking that night.  There are facts which clearly show opportunities to

stop the activities that were missed and if proper fire house practices and procedures had been followed would not have been missed.

Clearly a fair and reasonable person could find that the pyromaniac impulse to daftly set ablaze the Hoxie Engine Company's kitchen table, by an immature and intoxicated First Lieutenant was, at the least, criminal mischief, and a totally inappropriate training exercise by an unqualified supervisor, which kindled not just the table fire, but the notion that setting illegal fires was acceptable behavior.  Indeed, a fair and reasonable persons could find that Lt. Hilbert's actions in this regard constituted outrageous conduct which shocks the conscience, and was a substantial link in the chain of events which led to probationary firefighter Celtruda flicking his lighter at 23 Library Street.

But no reasonable person can find that all the inappropriate activities that First Lieutenant Hilbert created and engaged in and led the probational member, Celtruda through that evening and following morning were reasonable, justified or harmless, and had no influence or impact on William Celtruda, or had no influence or impact on what subsequently transpired.  The degree of that impact and its relevancy is an issue of fact which must be decided by the trier of facts, not as a matter of law.

28

A trier of facts may reasonably find that Captain May and the other officers of the Hoxie Company, by ignoring their own by-laws and commons sense were concurrently and culpably inattentive in their choices of ignoring their duty; and, that inattention continued over the course of events which led to the plaintiffs' harm.  Thus a fair and reasonable person may find the officers conduct negligent or even reckless, but either way, a substantial factor in plaintiffs' loss which was co-existent with Celtruda's wrongdoing.

The defendants propound that there are no genuine disputes as to material facts.  The actual facts show otherwise.

"If the defendant's factual premises are flawed, the legal contentions that rest on those premises must fail as well" *DiMartino v Richens*, 263 Conn. 639, 822 A 2d 205 (2003)

Wherefore, it is respectfully submitted that since there are substantial issues of material fact which are disputed, the defendant's Motion for Summary Judgment must fail.

PLAINTIFF, ULTEGRA, LLC


By_____

John J. Carta, Jr.
31 Main Street
Essex, CT 06426
Tel: (860) 767-6570
Fax: 860-767-6573
E-mail: john@cartalaw.com
Juris No. 008727
Federal Bar #CT13131
Its Attorney


PLAINTIFF, GRETCHEN CHIPPERINI


By_____

Eugene C. Cushman
One Post Hill Place
New London, CT 06320
Tel: 860-447-2692
Fax: 860-442-3845
E-mail: arco.corp@snet.net
Juris No. 013439
Federal Bar #CT21245
Her Attorney

## **CERTIFICATION**

I hereby certify that on October 12, 2012 a copy of the foregoing was filed electronically and served by mal on any person unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to any person unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

_____

John Carta