UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

| | |
|---|---|
| ULTEGRA, LLC and<br>GRETCHEN CHIPPERINI,<br><br>           Plaintiffs<br><br>   v.<br><br>MYSTIC FIRE DISTRICT,<br>CHRISTOPHER WILKINS, FRANK<br>C. HILBERT, ANTHONY P.<br>MANFREDI, JR.,. CHRISTOPHER<br>MAY, JOHN H. KENNEDY, KYLE<br>HILBERT, CHRIS PAIGE, BRIAN<br>MOLKENTHIN, NICK ALLYN and<br>WILLIAM CELTRUDA, et al.<br><br>           Defendants | CIVIL ACTION NO.:<br>3:09-CV-1284 (MRK)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>OCTOBER 12, 2012 |

_____

### PLAINTIFFS' LOCAL RULE 56(a) 2 STATEMENT

Plaintiffs hereby submit the following in compliance with Local Rule 56(a) 2. The numbered paragraphs below correspond to the like numbered paragraphs contained in defendants' Local Rule 56(a) 1 statement.

    1.    Admitted.

2.     Without a specific statutory reference, plaintiffs have insufficient knowledge as to that portion of paragraph 2 which states "by way of state statue (sic)"; the remainder of paragraph is admitted.

3.     Relying upon the truth of the Hilbert affidavit, admitted

4.     Relying upon the truth of the Hilbert affidavit, admitted

5.     Admitted that the by-laws contain the language in paragraph 5. Further admitted as to location.

6.     Relying upon the truth of the Hilbert affidavit, admitted.

7.     Relying upon the truth of the Manfredi affidavit, admitted.

8.     Relying upon the truth of the Hilbert affidavit, admitted.

9.     Relying upon the truth of the Hilbert affidavit, admitted.

10.    Relying upon the truth of the May affidavit, admitted.

11.    Relying upon the truth of the May affidavit, admitted.

12.    Relying upon the truth of the May affidavit, admitted.

13.    Admitted.

14.    Admitted.

15.    Admitted.

16.    Denied. **(Exhibit A, Kyle Hilbert statement dated August 14, 2008; Exhibit B, William Celtruda Deposition page 27, lines 5-6, page 63, lines 23-25, page 75, lines 23-25, Exhibit C, Nickolas Allyn statement dated August 25, 2008)**

17. Relying upon the truth of the May affidavit, admitted.

18. Relying upon the truth of the May affidavit, admitted.

19. Relying upon the truth of the May affidavit, admitted.

20. Denied. **(Exhibit B, Celtruda Deposition page 51, lines 3-19, page 53, lines 2-3, page 54, lines 21-25, page 55, lines 2-6, page 57, lines 18-22, page 58, lines 1-11, Exhibit D, Arrest Warrant Affidavit Paragraph 9)**

21. Denied. **(Exhibit A, Kyle Hilbert statement dated August 14, 2008, Exhibit C, Nickolas Allyn statement dated August 25, 2008)**

22. Relying upon the truth of the affidavits referred to in paragraph 22, admitted.

23. Admitted.

24. Denied. **(Exhibit A, Kyle Hilbert statement dated August 14, 2008)**

25. Admitted.

26. Admitted.

27. Admitted.

28. Denied. **(Exhibit A, Kyle Hilbert statement dated August 14, 2008)**

29. Denied **(Exhibit A, Kyle Hilbert statement dated August 14, 2008)**

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Denied. **(Exhibit A, Kyle Hilbert statement dated August 14, 2008)**

37. Denied. **(Exhibit A, Kyle Hilbert statement dated August 14, 2008)**

## **DISPUTED ISSUES OF MATERIAL FACT**

1. Article 9, Paragraph 1 of the **Bylaws of the B.F. Hoxie Engine Co., No. 1** (a copy of which is attached hereto as **Exhibit E)** provides in part as follows: "It shall be the duty of the Investigating Committee to inquire rigidly into the character and competency of the candidate for membership . . ." The Investigating Committee, exercising patent nepotism and cronyism, blatantly and intentionally violated that provision in the case of William Celtruda by not "rigidly" inquiring into the character and competency of Mr. Celtruda. In fact the Investigating Committee did nothing by way of an investigation other than to meet with the applicant one time. **(Exhibit F, May deposition page 22, lines 4-25, page 23, lines 1-10, Defendants' Local Rule 56 statement, paragraph 14)**

2. Celtruda was recommended for membership in the fire department by Dominic Celtruda, his uncle, and Rocco Celtruda, his grandfather. At the time of the

application, Celtruda was living with his grandfather, Rocco, who knew he had a drug problem and a pending drunk driving charge (**Exhibit B, Celtruda deposition page 27 lines 2-6, page 29, lines 15-18, page 34, lines 8-10, page 75, lines 11-14, 23-25)**, and had been in an inpatient treatment program in Michigan **(Exhibit B, Celtruda deposition, page 79, lines 13-15)** but these facts were never disclosed to the Investigating Committee, or, if they were disclosed, the Investigating Committee chose to overlook them. Celtruda used drugs while living with his grandfather, Rocco. **(Exhibit B, Celtruda deposition page 73, lines 8-13)**

      3.     Celtruda consumed alcohol at the fire station at other times and was intoxicated at the fire station multiple times prior to setting the fire which destroyed plaintiff's dwelling. **(Exhibit B, Celtruda deposition page 62, lines 20-25, page 63, lines 19-25)** In **Exhibit's D, F and G of Defendants' Rule 56 Statement,** firefighters, Anthony Manfredi, Nickolas Allyn, and Kyle Hilbert respectively swore that they never saw Celtruda consume alcohol in the station (Hilbert states prior to July 24, 2008); these statements, under oath, contradict Celtruda's own admission, above, that he had been intoxicated at the fire station multiple times. None of the other affiants claims to have never seen Celtruda consume alcohol in the station. Can an inference be drawn that the absence of such a statement means that these other affiants *did* observe Celtruda consuming alcohol at the station?

4. Celtruda was subjected to teasing and/or taunting by other members of the B.F. Hoxie Engine Company No. 1concerning his status as a probationary member or the fact that he had not fought a fire during his short tenure as a probationary fireman, and this was the reason he set the subject fire. **(Exhibit B, Celtruda deposition page 50, lines 2-19, page 51, lines 3-25, page 52, line 2, Page 52, line 25 and page 53, lines 2-3, page 54, lines 21-25 and page 55, lines2-6, page 56, lines 13-17, page 57, lines 18-22, Exhibit D, Arrest Warrant Affidavit paragraph 9)**

5. On the night Celtruda started the fire he and Hilbert, his superior officer, in command of the fire house that night, committed an unauthorized, if not criminal, act of setting fire to property that did not belong to them, which unequivocally and clearly demonstrated to Celtruda an atmosphere in which setting outlawed fires was acceptable behavior. **(Exhibit A, Hilbert statement dated August 14, 2008)**

6. Celtruda was obviously intoxicated when he left the station to set the fire, but no other member attempted to stop him from leaving the firehouse, despite his obviously impaired condition. **(Exhibit B, Celtruda deposition page110, lines 18-25 and page 111, lines 2-18)** Celtruda admitted to drinking beer with Kyle Hilbert and also admitted to drinking Jack Daniels on the night he set the fire. **(Exhibit B, Celtruda**

**deposition pages 46-47 lines 19-25 on page 46 and line 2 on page 47)** Kyle Hilbert was present while Celtruda was drinking beer and Jack Daniels and knew Celtruda was intoxicated but did not attempt to stop him from leaving the firehouse. **(Celtruda deposition page 111, lines 22-25 and page 112 line 2)**

    7.    Contrary to statements in his affidavit, **(Exhibit G to defendants' Local Rule 56 statement)** Kyle Hilbert felt that Celtruda was the type of person who could set a fire; he characterized Celtruda as hot headed and not able to listen to orders. **(Exhibit A, Hilbert statement dated August 14, 2008)** This is directly contrary to the statements contained in his Exhibit G affidavit. In his August 14, 2008, Hilbert also stated that on the night of July 24, 2008, while he and Celtruda were drinking, Celtruda said something to the effect: "how cool it would be to have a fire". This was just prior to Celtruda leaving the station and setting fire to plaintiff's house. **(Exhibit A, Hilbert statement dated August 14, 2008)** This directly conflicts with **Hilbert's Exhibit G Rule 56 affidavit** wherein he states in paragraph 17: "Mr. Celtruda never indicated to me, in word or deed, that he was interested in setting a structure on fire. I had no reason to believe that Mr. Celtruda would engage in the act of arson at any time."

    8.    Contrary to statements in his affidavit, **(Exhibit F to defendants' Local Rule 56 statement),** Nickolas Allyn never trusted Celtruda, never liked him and had a gut feeling about him because of his disrespect to the officers in the department and the

fact that he did not listen. **(Exhibit C, Allyn statement dated August 25, 2008)** This is directly contrary to the statements contained in his Exhibit F affidavit.

9. Contrary to paragraph 7 in his affidavit, **(Exhibit F to defendants' Local Rule 56 statement),** Nickolas Allyn did consume alcohol on Fire Department property. **(Exhibit G, Allyn deposition, page 11, lines 14-23)**

10. Mystic Fire District is totally independent and separate from the Town of Groton, and no one in the Town controls the MFD Executive Committee or its officers and members. It is not a "municipality", and does not perform any governmental function, on behalf of the Town. **(Exhibit H, Affidavit of William Johnson and Exhibit I, Affidavit of George R. Sylvestre)**

11. In light of the foregoing plaintiffs claim the following:

    a. Contrary to the by-laws of the B.F. Hoxie Engine Co., No. 1, there was no "rigid" investigation into the background of William Celtruda or his fitness to be a firefighter; in fact there was no investigation whatsoever.

    b. Celtruda lived with his grandfather, Rocco, at the time he applied to become a firefighter. Rocco was aware of his drug usage, his inpatient treatment, and Celtruda's pending drunk driving case. Celtruda used drugs on a regular basis while living with Rocco. Rocco recommended Celtruda to become a firefighter despite this knowledge. Rocco never advised the investigating committee of these facts, or, if he did, the investigating committee chose to overlook this vital information.

John J. Carta, Jr. LLC
31 North Main Street, Essex, CT 06426
(T) 860-767-6570, (F) 860-767-6573

Page 8

    c. Celtruda was teased and taunted by other firefighters about his lack of experience in fighting a real fire. In fact the night Celtruda started the fire, he and Kyle Hilbert, the ranking officer in charge, proceeded to become intoxicated, discussed how "cool" it would be to have a fire to fight, destroyed property of the Mystic Fire District, and actually simulated a real fire by starting fire to a table. To argue that Celtruda was not teased or taunted is to ignore the volatile atmosphere then and there existing which was aggravated by drunkenness and simulating a real fire, all of which was engaged in and encouraged by the ranking officer in charge on the night in question.

    d. Although each affiant who signed affidavits in connection with defendants' Local Rule 56 statement swore that Celtruda never gave any indication, "in word or deed", that he intended on setting a structure fire, these statements are contrary to Hilbert's August 14, 2008 statement and Allyn's August 25, 2008 statement referred to above. In fact the night of the fire setting Celtruda commented about how "cool" it would be to fight a fire.

    e. Celtruda, by his own admission, was intoxicated "multiple times" at the fire station.

    f. The defendants had actual or constructive knowledge of Celtruda's substance abuse issues, his anger issues, his lack of experience in fighting real fires, his lack of respect for those in charge, his inability to follow orders, his pending drunk driving charge, his drinking to excess while at the station, his eagerness to fight a real

fire, and his intoxication on the night of July 24-morning of July 25, 2008. Notwithstanding this knowledge and awareness, Celtruda was teased and taunted about his lack of experience. This was the reason he committed arson, by his own admission.

      g. Defendants knowingly created and nurtured an atmosphere of cronyism and nepotism where new members were approved, not on merit, but because of who you happened to know or be related to. Rules were not followed. Beer was made readily available, and drinking was not only tolerated but encouraged by those in charge. (**See Kyle Hilbert Affidavit wherein he admits attaining the rank of First Lieutenant**, **Exhibit G to defendants' Rule 56 statement**.)

Plaintiff, Ultegra, LLC

BY_____
John J. Carta, Jr.
31North Main Street
Essex, CT 06426
(860)-767-6570
Fax - (860)-767-6573
E-mail john@cartalaw.com
Juris No. 008727
Federal Bar No. ct 13131
Its Attorney

Plaintiff, Gretchen Chipperini

By_____ct21245_____
Eugene C. Cushman
One Post Hill Place
New London, CT 06320
Tel: 860-447-2692
Fax:860-442-3845
E-mail arco.corp@snet.net
Juris No. 013439
Federal Bar No. ct 21245
Her Attorney

## CERTIFICATION

I hereby certify that on October 12, 2012 a copy of the foregoing was filed electronically and served by mal on any person unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to any person unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

_____

John Carta