## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

ULTEGRA, LLC and
GRETCHEN CHIPPERINI,                          CIVIL ACTION NO.:
                                              3:09-CV-1284 (MPS)

           **Plaintiffs**

     v.

MYSTIC FIRE DISTRICT, ET AL

         Defendants                       AUGUST, 2013

_____

## JOINT TRIAL MEMORANDUM

## 1.    TRIAL COUNSEL:

 PLAINTIFFS:

John J. Carta, Jr.                            Eugene C. Cushman
31 North Main Street                          One Post Hill Place
Essex, CT 06426                               New London, CT 06320
860-767-6570                                  860-447-2692
860-767-6570 (Fax)                            860-442-3845 (Fax)
Email: john@cartalaw.com                      Email: arco.corp@snet.net

<u>MYSTIC DEFENDANTS</u>:

Mystic Defendants –    Michael C. Deakin, Esq.
Federal Bar No. 15376
Paul T. Edwards, Esq.
Federal Bar No. 13331
DEAKIN EDWARD & CLARK, LLP
245 Amity Road, Suite 200
Woodbridge, CT 06525
Office: (203) 387-5100
**Fax: (203) 387-5101**
Cell: (860) 833-4806 (P. Edwards)
Cell: (203) 605-8117 (M. Deakin)
mdeakin@deakinedwardsclark.com
pedwards@deakinedwardsclark.com

**2.    JURISDICTION:**

Jurisdiction in this matter exists pursuant to 28 U.S.C. Section 1331because of

the existence of a federal question which involves claims under 42 U.S.C. Section 1983.

**3.    JURY TRIAL:**

This case is to be tried to a jury.

**4.    LENGTH OF TRIAL:**

It is anticipated that plaintiffs' case in chief will consume approximately 5 trial

days.

It is anticipated that the defendants' defense in chief will take 2-3 days.

**5.    FURTHER PROCEEDINGS:**

Plaintiffs do not anticipate any further proceedings on their part.

Defendants have filed with this Joint Trial Memorandum Rule 702 _Daubert_ Motions in Limine as to Plaintiffs' Damage and Liability experts. Defendants anticipate the need for a pretrial hearing on these Motions at a minimum.

6. **NATURE OF CASE:**

**Plaintiffs:**

Plaintiffs have alleged that on July 25, 2008 defendant, William Celtruda, then a probationary fire fighter with defendant Mystic Fire District, set fire to plaintiff's home completely destroying the structure. After a decision on defendants' motion for summary, counts 7, 11-14, 16, 17, 19, 20, 22, and 26 survived:

**Count Seven** is a negligence count against Christopher May

**Counts 11-14** allege negligence (same as above) violation of civil rights and wanton and reckless conduct against Kyle Hilbert. This defendant was present at the fire department on the evening of July 24, 2008, was drinking with Celtruda, admitted to being intoxicated and assisted Celtruda in setting fire to a table.

**Count 16** alleges wanton and reckless conduct against Chris Paige. This defendant was present at the fire house on the evening of July 24, 2008.

**Count 17** alleges negligence against Brian Molkenthin; **Count 19** alleges wanton and reckless conduct against Brian Molkenthin. This defendant, an officer of the fire company, was present at the fire house on the evening of July 24, 2008.

**Count 20** is a negligence count against Nick Allyn; **Count 22** alleges wanton and reckless conduct against Nick Allyn. This defendant, an officer of the fire company, was present at the fire house on the evening of July 24, 2008.

**Count 26** alleges negligence against the Mystic Fire District under Connecticut General Statutes Section 52-557n in that:

> It failed to properly train and/or the firefighters and officers of the Fire District, including but not limited to the Defendant, William Celtruda, in accordance with the policies, rules and/or procedures of the Mystic Fire District;

> It failed to prevent the consumption of beverage alcohol by firefighters while on duty;

> It failed to prevent the consumption of beverage alcohol by firefighters while on duty and/or failed to prevent firefighters who were intoxicated from engaging in firefighting duties in violation of the policies and procedures of the Mystic Fire District;

> It furnished beverage alcohol to the defendant, William Celtruda, causing him to become intoxicated resulting in the loss of his judgment and faculties;

> It failed to prevent the hazing, mistreatment and/or taunting of probationary firefighters including William Celtruda.

It failed to intervene and prevent the setting of the fire; and,

It allowed and/or required the defendant, William Celtruda, to leave the fire station in a drunken and intoxicated state when it knew or should have known that the judgment of Mr. Celtruda was impaired, that he wanted to fight a structural fire, and that he might be likely to set a structural fire.

Section 52-557n abrogated the common law doctrine providing blanket immunity for municipalities and limiting immunity to suits which arise from the discharge of a discretionary duty rather than a ministerial one.

**<span style="color:red">Defendant</span>:**

Defendants have asserted four (4) Affirmative Defenses, including that the defendants owed no duty to the plaintiffs under the Public Duty Doctrine; (2) the individual defendants and the Mystic Fire District are entitled to governmental immunity based on their discretionary acts; (3) the individual defendant (Kyle Hilbert only) is entitled to qualified immunity on the civil rights claims: and (4) the plaintiffs' claims are barred by the applicable statute of limitations, General Statutes §52-577 and §52-584.

**7.      TRIAL BY MAGISTRATE JUDGE:**

This is scheduled as a jury trial.

**8.      EVIDENCE**

**A1.     Plaintiffs' Witnesses:**

i.     Gretchen Chipperini
       87 Phoenix Drive, Groton, CT.

       This witness will describe the condition of the structure prior to the fire and will describe in detail the nature of the improvements which will include a room by room description of the nature and quality of the work performed.

This witness will testify during the case in chief.

This witness' testimony could last several days.

ii.    Thomas Edwards, Architect.
       1156 Main Street
       Branford, CT 06405

       This witness will testify in detail and describe the nature of the improvements. This witness will provide plans, sketches, drawings, reproductions and renderings of the interior and exterior of the structure which, in his opinion, accurately depict the way the structure appeared before the fire, and the nature of the interior improvements before the fire. This opinion is based upon numerous discussions with plaintiff, an examination of the structure and several remnants surviving the fire, his many conferences with representatives from Petra Construction Corp., his examination of Petra Construction Corp.'s report, his education, training, experience and expertise in performing architectural services on high end and unusual buildings.

       This witness will testify during the case in chief.

       This witness' testimony will last approximately one-half day.

iii.   Norman Benedict
       2795 Whitney Avenue
       Hamden, CT 06581

This witness, a licensed real estate appraiser, will provide testimony about the value of the structure pre-fire. Mr. Benedict will testify that he used two methods to arrive at value: the cost approach and sales comparison approach. Mr. Benedict will testify that in his opinion, after reconciling the two approaches, the structure had a retrospective market value of $7,850,000. This opinion is based upon numerous discussions with plaintiff, an examination of the destroyed structure, examination of the architect's plans, sketches, drawings, reproductions and renderings, examination of Petra Construction Corp.'s report, and Mr. Benedict's education, training, experience and expertise in preparing appraisals.

This witness will testify during the case in chief.

This witnesses' testimony will last approximately one-half day.

iv.      Petra Construction Corp.
        98 Rebeschi Drive
        North Haven, CT 06473

A representative from Petra Construction Corp. will provide his opinion that the cost to re-construct the damaged structure is $7,281,482.00. This opinion is based upon many discussions with plaintiff and architect, examination of the destroyed structure and surviving remnants, examination of the plans, sketches, drawings, reproductions and renderings prepared by Mr. Edwards, and his education, training, experience and expertise in preparing estimates for the construction of structures similar to the destroyed structure.

This witness will testify during the case in chief.

This witnesses' testimony will last approximately one-half day

v.       John K. Murphy

2808  233rd Ave.
Sammamish, WA 98075

This witness is a practicing attorney and retired deputy Fire Chief, after 32 years. His areas of expertise include human resources, testing, hiring, training, promotions, and termination.

This witness will testify that his opinion is that the Mystic Fire District was negligent in hiring and supervising William Celtruda. His opinion is based upon his examination of documents including depositions, court documents, his own research, his training, education and experience in hiring and supervision practices, which is included in his areas of expertise.

This witness may, or may not, testify during the case in chief. His testimony will last approximately one-half day. In the event this witness does not testify during the case in chief, he may be called as a rebuttal witness.

vi.     William Celtruda
        MacDougall - Walker
        1153 East Street South
        Suffield, CT

Defendant has indicated it may call this witness.

This witness has indicated in a statement given to the Groton Police, and in his deposition testimony that teasing and taunting were a factor in causing him to start the fire. He has also described his substance abuse problems which were well known to his grandfather, with whom he lived, and who was one of his sponsors.

Mr. Celtruda's testimony is important for two reasons: 1. it shows how deeply he was affected by the treatment he received as a

probationary fire firefighter; and, 2. his substance abuse issues were known by his grandfather who recommended him for membership, despite this knowledge, and, further demonstrates, that no investigation was conducted prior to Mr. Celtruda being accepted for membership.

vii.     Keeper of the records, Groton Police Department.

This witness, if needed, will lay the foundation to admit the business records of the Groton Police Department including the statements of Kyle Hilbert and Nickolas Allyn and the arrest warrant affidavit.

viii.    William Johnson
Counselor on the Groton Town Counsel

This witness will testify that the Mystic Fire District is a separate and distinct legal entity from the Town of Groton, and is not controlled nor in any way connected to the Town of Groton.

This witness will testify in the plaintiffs' case in chief. His testimony will last approximately one-half hour.

## A2.     Defendant's Witnesses:

A1:     Defendants object to the testimony of Mr. Norman Benedict and Mr. Ken Woodward, for the reasons set forth in the attached Motion in Limine, submitted pursuant to Rule 104 and 702 of the Federal Rules of Evidence, and the reasoning in the *Daubert* and *Kumho* Tire line of cases.

A2.     Defendants' Witnesses:     Depending on the evidence presented during the plaintiffs' case-in-chief, the defendants may call the following witnesses,

reserving the right not to call said witnesses and further reserving the right to call witnesses not listed and not reasonably known or expected to be called in response to the plaintiff's case-in-case.

1. **Chief Frank C. Hilbert:** Chief Hilbert will testify in accordance with the affidavit he submitted in connection with the Defendants' Motion for Summary Judgment. Chief Hilbert is also expected to testify regarding his background and experience in firefighting, his duties and responsibilities as Fire Chief, the history of and relationship between the Mystic Fire District and the B.F. Hoxie Company, the rules and regulations concerning both, the chain of command, training and supervision of firefighters, and his knowledge of the fire and the events concerning this lawsuit. (One Hour of Anticipated Testimony)(Will be called only if the need arises)

2. **Assistant Chief Anthony Manfredi:** Asst. Chief Manfredi will testify in accordance with the affidavit he submitted in connection with the Defendants' Motion for Summary Judgment. He is also expected to testify regarding his background and experience in firefighting, his duties and responsibilities as Assistant Chief, the rules and regulations concerning the Fire District and B.F. Hoxie Company, and his knowledge of the fire and the events concerning this lawsuit. (45 Minutes of Anticipated Testimony)(Will be called only if the need arises)

3.      Captain Christopher May:  Captain May will testify in accordance with the affidavit he submitted in connection with the Defendants' Motion for Summary Judgment.  He is also expected to testify regarding his background and experience as a firefighter, his duties as Captain and as the person is charge of membership, his knowledge of the events surrounding this lawsuit.   (One Hour of Anticipated Testimony)(Will be called only if the need arises)

4.      Lt. Kyle Hilbert:      Lt. Hilbert will testify in accordance with the affidavit he submitted in connection with the Defendants' Motion for Summary Judgment.  He is also expected to testify regarding his background and experience as a firefighter, his duties as Lieutenant, the rules and regulations of the B.F. Hoxie Company, and his knowledge of the events surrounding this lawsuit. (One and One Half Hours of Anticipated Testimony)(Will be called only if the need arises)

5.      Chris Paige: Mr. Paige will testify in accordance with the affidavit he submitted in connection with the Motion for Summary Judgment.  He will also testify regarding his background and experience as a firefighter, the rules and regulations of the B.F. Hoxie Company, and his knowledge of the events surrounding this lawsuit. (One Hour of Anticipated Testimony)(Will be called only if the need arises)

6.   Brian Molkenthin:     Mr. Molkenthin will testify will testify in accordance with the affidavit he submitted in connection with the Motion for Summary Judgment.  He will also testify regarding his background and experience as a firefighter, his knowledge of the events surrounding this lawsuit.   (One Hour of Anticipated Testimony)(Will be called only if the need arises)

7.   Nickolas Allyn:          Mr. Allyn will testify in accordance with the affidavit he submitted in connection with the Motion for Summary Judgment.  He will also testify regarding his background and experience as a firefighter, his knowledge of the events surrounding this lawsuit.  (One Hour of Anticipated Testimony)(Will be called only if the need arises)

8.   Mr. Dan Gardiner – Expert Witness – Mr. Gardiner will testify in accordance with the report he authored with respect to this claim, and will testify in rebuttal to the testimony, if any, of the plaintiff's liability expert, Mr. John K. Murhpy.  Mr. Gardiner will testify that the defendants were not required to conduct any background check or psychological examination of William Celtrada, and that it was reasonable not to do so, given the size of the volunteer organization and the circumstances and information known the District and its members at the time.   Mr. Gardiner's opinions are based on his review of documents listed in his report.   Mr. Gardiner's CV is attached. (One and one half hours)(Will be called only if the need arises)

9.      Mr. Albert W. Franke III – Defendants' Damages Expert – Mr. Franke is a certified real estate appraiser, and principal at Advisra Real Estate Valuation & Counseling, 35 Elm Street, New Haven Connecticut.     Mr. Franke will provide testimony regarding the appraised value of the subject premises, based on a sales comparison approach and cost approach, and will testify in accordance with his report dated February 10, 2012.   He will testify, based on the review of the documents provided to him, and based on his background, experience and research into the property, that on July 25, 2008, the property at 23 Library Street had an appraised value of $820,000.00, less the value of the land of $215,000.00, for a final value opinion of $605,000.00.   Mr. Franke's CV is attached hereto. (Two Hours of testimony) (Will be called only if the need arises).

10.      Keeper of the Records, Town of Groton – The witness, if necessary, will lay the foundation for the production of tax records, appraisals, the Grand List, and legal documents filed by the plaintiff Gretchen Chipperini in connection with her tax appeals concerning 24 Library Street, Mystic, CT.  (Will be called only if the need arises).

11.      William Celtruda, MacDougall-Walker, 1153 East Street South, Suffield, CT.   Mr. Celtruda will testify concerning his tenure as a probationary fireman at the B.F. Hoxie Engine Company, his training, and his personal knowledge of the events,

including the fire, at issue in this lawsuit.  He will testify, inter alia, that he takes responsibility for the fire and that the Mystic Fire District or its members are not responsible for his actions.  (Will be called only if the need arises).

12.     Rocco Celtruda – Mr. Celtruda will testify regarding his relationship with William Celtruda, his encouraging him to join the fire department as a volunteer and his knowledge regarding the events surrounding this lawsuit.  (One hour) (Will be called only if the need arises)

13.     Other members of the Fire Department – Depending on the testimony offered in the plaintiff's case in chief, the defendants may call other members of the B.F. Hoxie Engine Company and/or members/officers of the Mystic Fire District.

14.     Mary Gardner – Tax Assessor – Town of Groton – Mary Gardner will testify, and lay the foundation for, documents and records contained in the Tax Assessor's office concerning the plaintiffs' property, including photographs, appraisals, statements, tax assessor cards, permits, etc.

**B1.    Plaintiffs' Exhibits**:

1.    Samples of remnants of woodwork damaged in fire, as yet not specifically identified, being stored at Petra Construction Corp.

2.-4.    Copies of each expert's report, including photos, sketches, etc.(Defendant's counsel has copies)

5.    Copies of Groton Police Department report including arrest warrant affidavit and statements of Kyle Hilbert, Nickolas Allyn and William Celtruda.  (Defendant's counsel has copies.)

6(a-h).Approximately 8 computer Generated Renderings depicting certain interior areas of structure prior to fire prepared by Thomas Edwards.

7.    By laws of B.F. Hoxie Engine Co. No. 1, Inc.

8.    William Celtruda's application for membership.

9.    Plaintiffs may introduce portions of deposition testimony for impeachment purposes.

**B2.    Defendant's Exhibits:**

B1:    Plaintiff's Exhibits (Defendants' Objections)

**Defendants object to plaintiffs' Exhibits as follows:**

2-4.    Copies of each Expert's Report, including photos, sketches, etc. –

Defendants' object to the introduction of any testimony regarding the defendants'

experts Mr. Ken Woodward and Mr. Norman Benedict as to damages, for the reasons set for in the defendants' Motion in Limine, attached hereto. Depending on the court's ruling on the Motion in Limine, defendants object to the introduction of the Expert's Reports, insofar as said reports are hearsay; Fed. R. of Evid. 801; are cumulative of the experts' live testimony and, depending on the live testimony of the expert, may not be admissible for lack of foundation or because said reports will mislead the jury, or cause undue prejudice. Fed. R. of Evid. 403.

5.      Copies of the Groton Police Department report – Defendants object to those portions of the Groton Police Department that are inadmissible on the grounds of hearsay, relevance, confusion, and prejudice. Fed. R. of Evid. 801 and 403. The defendants object to the admission of the arrest warrant application because it is irrelevant and contains prejudicial statements regarding other fires allegedly set by Mr. Celtruda. The defendants also object to the admission of the statement made by Kyle Hilbert, Nickolas Allyn and William Celtruda as cumulative, as containing opinion testimony, hearsay testimony and because the prejudice of the statements outweighs their probative value. Id.

B2:     **Defendants' Proposed Exhibits**

D501:  Email from plaintiff to Norman Benedict dated August 4, 2011, marked as Defendants' Exhibit 4J at deposition of Norman Benedict;

D502: "Overview" – marked as Defendants' Exhibit 4C at deposition of Norman Benedict.

D503: Email from Gretchen Chipperini to Norman Benedict dated November 1, 2011, and marked as Defendants' Exhibit 4G at Norman Benedict's deposition.

D504: *Writ, Summons and Complaint in Chipperini, et al v. Town of Groton and Town of Groton, Board of Tax Review*, with a return date of 7/23/02, with Attorney Eugene Cushman as counsel of Record.

D505: Notice of Plaintiff's Compliance, with attached Compliance, dated December 9, 2004, in Docket No. CV-02-0562809.

D506:  Post Trial Memorandum of Plaintiffs Inge and Gretchen Chipperini, dated June 27, 2005 in CV-02-0562809S.

D507:  Direct Examination of Gretchen Chipperini by Attorney Gene Cushman (beginning at page 175) on March 11, 1998 in Gretchen Chipperini et al v. Town of Groton, CV 93 0527760S.

D508: Plaintiffs' Compliance with Defendants' First set of Interrogatories and Requests for Production, dated March 10, 2010, in _Ultegra v. Mystic Fire District, et al_., 09 CV 1294 (MPK) (FOR ID ONLY).

D509:   Appraisal by George Joseph/Robert Silverstein dated September 17, 2004, as provided in Plaintiffs' Compliance with Discovery.

D510: BF Hoxie Engine Company Bunkroom Rules, marked as Exhibit 3 at Chris May's deposition.

D511:   Transcripts of plaintiff Gretchen Chipperini's trial testimony of March 22, 2005, in Chipperini v. Town of Groton, Docket No. CV 05-62809, New London Superior Court, in connection with her tax appeal for the 23 Library Street property.  (ID ONLY).

D512:       Various photographs of 23 Library Street contained in Plaintiffs' Compliance with discovery dated March 10, 2010, and marked as Exhibit 1 at the deposition of Gretchen Chipperini on May 19, 2011.

D513 – Personnel Polices, marked as Exhibit One at Chris May's deposition. (ID ONLY).

**C1.   Plaintiffs' Deposition Testimony:**

None for plaintiffs except as noted above.

<span style="color:red">**C2.   Defendant's Deposition Testimony:**</span>

None.

**9.     STIPULATIONS AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

i.     Stipulation of uncontroverted facts:

1.     On July 25, 2008 plaintiff, Ultegra, LLC was the owner of a parcel of land with a dwelling located at 23 Library Street in the Town of Mystic, Connecticut; on said date plaintiff Gretchen Chipperini was the ultimate beneficial owner of Ultegra, LLC and had located upon said property certain items of personal property and personal effects.

2.     At all times relevant hereto, defendant, Mystic Fire District, operated and controlled the Hoxie Fire Station located at 34 Broadway in Mystic, Connecticut.

3.     Defendant became a probationary fire fighter at Hoxie Fire Station on or about May 6, 2008; at that time he was living with his grandfather, Rocco, who recommended Celtruda for membership despite the fact that he was aware of Celtruda's drinking, drug use, prior inpatient treatment and his pending DUI charge.

4. At the time Celtruda was voted in as a member, defendant Christopher May was a Captain of the Hoxie Fire Station and was also on the investigating committee.

5. Article 9, Paragraph 1. provides in part as follows: "It shall be the duty of the Investigating Committee to inquire rigidly into the character and competency of the candidate for membership . . ."

6. In considering Celtruda's application for membership, other than meeting with the applicant one time, the investigating committee conducted no inquiry into his character and competency  and conducted no background checks or any other kind of investigation.

7. On the evening of July 24, 2008 and the morning of July 25, 2008 defendant Kyle Hilbert was the officer in charge at the Hoxie Fire Station.

8. On the evening of July 24, 2008 defendants Kylke Hilbert, Chris Paige, Brian Molkenthin, Nick Allyn and William Celtruda were on duty at Hoxie Station and were to spend the night at the station.

9. On the evening of July 24, 2008 and into the morning of July 25, 2008 defendants Kyle Hilbert and William Celtruda consumed alcoholic beverages at the fire station to the point of becoming intoxicated.

10. During the early morning of July 25, 2008 Kyle Hilbert and William Celtruda set fire to a table outside of the fire house and proceeded to extinguish the fire.

11. During the early morning of July 25, 2008, defendant William Celtruda, who was intoxicated, left the fire station and set fire to plaintiffs' dwelling at 23 Library Street in Mystic, completely destroying the structure; none of the other fire fighters present at the station attempted to stop him from leaving.

12. Celtruda consumed alcohol at the fire station at other times and was intoxicated at the station multiple times prior to setting the subject fire.

13. Defendant, Mystic Fire District, is a separate and distinct legal entity from the Town of Groton.

Defendants will not stipulate to the paragraph 2, 3, 5, 6, 7, 8, 9, 11, 12, or 13.


ii.a.    Plaintiffs' proposed voir dire questions:

1. Have you, or any relative, associate or close friend, at any time, work for, been associated with, been a member of, or volunteered at any of the following:

a. a fire department or volunteer fire company (paid or volunteer)
b. an insurance company
c. a  town, city, or state government or agency
d. a real estate agency or real estate appraisal company
e. a builder or construction contractor
f.  an architect firm
g. a police department
h. a fire marshal's office
i. an accident or fire investigation firm

2. Do you personally know any volunteer firemen or firewomen who are relatives or close friends.

3. Do you have any advanced, specialized, or unique knowledge, skills, education or training related to:

a. real estate values or appraisals
b. qualities of building materials
c. building construction methods
d. building construction quality
e. interior design
f. house remodeling
g. psychology
h. human resources, or personnel practices
i. architecture
j. the law

4. Have you or any relative, associate or close friend been a member of

any city, town or state board, council or commission.

       5. Do you have any strong political beliefs about how taxpayer's money is spent.

       6. Have you or any family members, had any drug or alcohol abuse problems.

       7.Do you or any of your family members work for or with other family members or work in the same company as other family members.

       8. Did you or any family member ever gain employment with the aid or assistance of a family member, or due to a family relationship.


ii.b.    Defendant's proposed voir dire questions


1.    Have you, your spouse or any close friends or relatives ever brought suit against a municipal officer, including a fire department, firefighter, or police officer for violation of your civil rights?

2.    Do you know any of the lawyers or law firms involved in the case?

3.    Do you have any opinions about people who file lawsuits seeking money to compensate them for personal injury or damages and/or violations of their constitutional rights based on the conduct of a firefighter or police officer?  If so, please state those opinions.

4.    Have you or any of your family members or close friends ever been associated with a fire department (volunteer or paid) or public service organization?  If so, please describe this association and state whether that relationship would allow you to fairly and objectively evaluate the testimony in this case.

5.    Have you or any close friend or family member been involved in a lawsuit either as a party, a witness or juror?  If you were a party, were you a plaintiff or a defendant and please describe the type of case and result.

If you were a witness, please describe what type of case, which side you testified for and the result of the case.  If you were a juror, please state whether the case went to verdict, the type of case and the result.

6.      Do you have any commitments which would keep you from serving on the jury in this case?

7.      Would you have any difficulty in sending the plaintiff home without any compensation for his claimed injuries if he did not prove, under the evidence submitted and the applicable law, that the defendants violated any of his rights or were the cause of his or her losses?

8.      Have you ever been required to undergo a background check or psychological evaluation as a prerequisite for employment?  If so, please state the specifics surrounding such requirement(s) and whether you have an opinion concerning such requirement.

9.      Have you, any member of your family or any of your close family friends been the victim of arson or known a person charged with arson?  If so, please state the specifics of each.

10.     Have you, any member of your family or any of your close family friends had drug or alcohol abuse problems?  If so, please explain the specifics and whether such person's employment was impacted by same.

11.     Have you, any member of your family or any of your close family friends.

12.     Have you, any member of your family or any of your close family friends been a member of the armed services?  If so, please state the specifics.

13.     Have you, any member of your family or any of your close family friends ever made claim for damage to your home as a result of another's negligence?  If so, please state the specifics of such a claim.


iii.    Proposed jury instructions: Plaintiff:

        **See attached.**

Proposed jury instructions:  Defendant:

**Section 1983 – State Created Danger**

Plaintiffs claim that they suffered damages to their home at 23 Library Street, thereby depriving them of their property to their financial loss, as a result of defendant Kyle Hilbert's drinking alcohol with defendant William Celtruda, during which defendant Hilbert and defendant Celtruda set fire to a table located in the firehouse.   Plaintiffs also claim that Hilbert teased defendant Celtruda about not having fought a real fire and thereafter failed to prevent defendant Celtruda from leaving the firehouse in an intoxicated state.   Under the Due Process Clause of the 14th Amendment, state officials may not deprive an individual of life, liberty or property without due process of law.  The Due Process Clause generally does not require the state and its officials to protect individuals from harms caused by persons not acting on behalf of the government.  However, the Due Process Clause does prohibit state officials from engaging in conduct that renders an individual more vulnerable to such harms.  ["Passive conduct or a mere failure to intervene by state actors does not run afoul of the due process clause."]  *P.W. v. Fairport Cent. School District*, 2013 WL 690525, W.D. New York, (Telesca, U.S.D.J.) (February 25, 2013).

In this case, the plaintiffs claim that defendant Hilbert rendered the plaintiffs more vulnerable to harm by way of the above described conduct. To establish this claim, plaintiffs must prove all of the following four things by a preponderance of evidence: (1) the destruction of the plaintiffs' home was a foreseeable and fairly direct result of defendant Hilbert's conduct; (2) defendant Hilbert acted with deliberate indifference; (3) there was some type of relationship between defendant Hilbert and the plaintiff that distinguished the plaintiffs from the public at large; and (4) defendant Hilbert's action made the plaintiffs more vulnerable to the harm.

I will now explain each of these three elements.

The first of these four elements requires that plaintiffs to show that the harm to the plaintiffs was a foreseeable and fairly direct result of the defendant Hilbert's conduct. This element includes two related concepts: foreseeability and directness. Foreseeability concerns whether defendant Hilbert should have foreseen that defendant Celtruda would commit criminal arson. Directness concerns whether it is possible to draw a direct enough connection between the defendants' conduct and the arson committed by defendant Celtruda. To consider the question of directness, you should look at the chain of events that led to defendant Celtruda's arson, and you should consider where defendant Hilbert's conduct fits within that chain of events, and whether that conduct can be said to be a fairly direct cause of defendant Celtruda's arson. In

appropriate cases, the sufficient directness requirement can be met even if some other action or event comes between the defendant's conduct and the harm to the plaintiff.

The second of these four elements requires the plaintiff to show that defendant Hilbert acted with deliberate indifference. To show that defendant Hilbert acted with deliberate indifference, plaintiffs must show that defendant knew that there was a strong likelihood of harm to the plaintiffs, and that defendant Hilbert disregarded that risk by failing to take reasonable measures to address it. Plaintiff must show that the defendant Hilbert actually knew the risk. If plaintiffs prove that the risk of harm was obvious, you are entitled to infer from the obviousness of the risk that defendant Hilbert knew of the risk. However, defendant claims that even if there was an obvious risk that he was unaware of it. If you find that defendant Hilbert was unaware of the risk, then you must find that he was not deliberately indifferent.

The third of these four elements requires plaintiffs to show that there was some type of relationship between defendant Hilbert and the plaintiffs that distinguished plaintiffs from the public at large. It is not enough to show that defendant Hilbert's conduct created a risk to the general public. Instead, plaintiffs must show that defendant Hilbert's conduct created a foreseeable risk to the plaintiffs, a definable group of people including the plaintiffs themselves. **Model Jury Instruction**, 4.14, Third Circuit Court of Appeals, 2010 Edition, with supplemental case law added by the undersigned counsel for the defendants.

**QUALIFIED IMMUNITY** – The jury should not be instructed on Qualified Immunity, as this issue should be decided by the court, at the close of the plaintiff's case in chief or, at the conclusion of trial, with the jury answering interrogatories of disputed facts, in necessary.

### NEGLIGENCE

The essential elements of a cause of action in negligence are well established: duty breach of that duty; causation; and actual injury. . . . Duty is a legal conclusion about the relationships between individuals, made after the fact, and is imperative to a negligence cause of action.   Thus, there can be no actionable negligence unless there exists a cognizable of care.

In general, a defendant is not responsible for anticipating the intentional misconduct of a third party;  2 Restatement (Second), Torts §302 B, comment (d), pg. 89 (1965); unless the defendant knows or has reason to know of the third party's criminal propensity. . . . When a defendant's conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about by the actions of a third party does not relieve the defendant of liability, even though the third party's conduct is criminal, if the harm that occurred is within the

scope of the risk created by the defendant's conduct.  *Tim Doe #1, et al, v. St. Francis Hospital and Medical Center, et al*, (SC 18912) (Officially released on July 16, 2013).

### DAMAGES

Plaintiffs claim damages in connection with the total destruction of their home at 23 Library Road, in Mystic, Connecticut.   In order to recover damages, the plaintiffs were required to present evidence demonstrating the diminution in the fair market value of the home at 23 Library Street as a result of the subject fire.   *Whitman Hotel Corporation v. Elliot & Watrous Engineering Co.*, 137 Conn. 562, 573 (1951).   I am instructing you that the only evidence presented at trial of the fair market value was that of the defendant's expert.  As such, and only if you find that the defendants' are legally responsible for some or all of the plaintiff's claimed damages under the law I previously gave to you, you may award no more than $605,000.00 in damages to the plaintiffs for the loss of their house.   Again, you may only award damages if you find, under the law, that one or more of the defendants' conduct was a proximate cause of the plaintiffs' losses.

### CAUSATION

Defendants submit, as if fully set forth herein, the State of Connecticut Judicial Department's Jury Instructions on causation and governmental immunity as follows:

3.1-4 – Proximate Cause - Substantial Factor

3.1-8 -  Proximate Cause – Superceding Cause

3.34 – Governmental Immunity – Municipal Employee

iv.      Proposed Verdict Form:

**See attached.**

**Defendants' to be supplied.**

v.       Description of case and parties:

The plaintiffs, Ultegra, LLC and Gretchen Chipperini were the owners of a single family home in Mystic, CT.   On July 25, 2008, defendant William Celtruda intentionally burned down the house.    The house was totally destroyed.    In this lawsuit, the plaintiffs have sued defendant William Celtruda as well as the Mystic Fire District and four other volunteer firemen in the B.F. Hoxie Engine Company, Chris May, Kyle Hilbert, Chris Paige and Nick Allyn.   As to the Mystic Fire District and defendants Chris May, Kyle Hilbert, Chris Paige and Nick Allyn, the plaintiffs allege that one or more of them is legally responsible for fire at their home under various theories of liability, including claim for violation of their civil rights under 42 U.S.C. §1983, negligence, and recklessness.  The plaintiff has also sued defendant William Celtruda, the person who burned down the plaintiff's home.   Mr. Celtruda had recently been made a volunteer

member, on a probationary basis, in the B.F. Hoxie Company at the time his set the fire in the early morning hours of July 25, 2008.

The Mystic Fire District and the individual volunteer firemen deny all allegations against them and have raised various affirmative defenses, which the plaintiffs have denied.

**10.    <u>ANTICIPATED EVIDENTIARY PROBLEMS:</u>**

See above.

THE PLAINTIFF, ULTEGRA LLC

BY____/s/ John J. Carta, Jr._____
John J. Carta, Jr.
31 North Main Street
Essex, CT 06426
(860)-767-6570
Fax - (860)-767-6573
E-mail john@cartalaw.com
Juris No. 008727
Federal Bar No. ct 13131

## CERTIFICATION

I hereby certify that on August 20, 2013 a copy of the foregoing was filed electronically and served by mal on any person unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to any person unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

___/s/ John Carta_____
John Carta

THE DEFENDANTS,

BY:___/s/ Michael C. Deakin_____
      Michael C. Deakin, Esquire
      Fed. Bar I.D. CT15376
      DEAKIN EDWARDS & CLARK, LLP
      245 Amity Road, Suite 200
      Woodbridge, CT  06525
      Phone:  (203) 387-5100
      Fax:  (203) 387-5101
      mdeakin@deakinedwardsclark.com

## <u>CERTIFICATION</u>

I hereby certify that on August 20, 2013 a copy of the foregoing was filed electronically and served on any person unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the court's electronic filing system or by mail to any person unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

John Carta, Esq.
31 North Main Street
Essex, CT  06426
(E-mail: john@cartalaw.com)

William A. Celtruda
Inmate No.: 361946, Corrigan-Radgowski Correctional Center
986 Norwich-New London Tpke
Uncasville, CT 06382

Eugene Cushman, Esq.
One Post Hill Place
New London, CT  06320
(Email:  arco.corp@snet.net)

_____/s/ Michael C. Deakin_____
Michael C. Deakin, Esquire
