# UNITED STATES DISTRICT COURT DISTRICT OF CONNECTICUT



| | |
|---|---|
| **ULTEGRA, LLC and GRETCHEN CHIPPERINI,** | **CIVIL ACTION NO.: 3:09-CV-1284 (MPS)** |
| Plaintiffs | |
| v. | |
| **MYSTIC FIRE DISTRICT, ET AL** | |
| Defendants | **OCTOBER 24 , 2013** |

## MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION

### STANDARD OF REVIEW OF MOTIONS FOR RECONSIDERATION:

A district may reconsider an order, previously issued, under common law, and Federal Rules of Civil Procedure Sections 54(b) and 60(b). "A district court's power to rescind, reconsider, or modify an interlocutory order is derived from the common law, not from the Federal Rules of Civil Procedure." *City of Los Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 886 (9th Cir. 2001); *McConnell v. Lassen Cnty.*, No. 2:05-cv-0909 FCD DAD, 2008 WL 4482853, at *2 (E.D. Cal. Oct. 3, 2008)

("Where reconsideration of a non-final order is sought, the court has 'inherent jurisdiction to modify, alter, or revoke it.'" (quoting *United States v. Martin*, 226 F.3d 1042, 1048-49 (9th Cir. 2000)). In addition, Federal Rule of Civil Procedure 54(b) authorizes courts to revise 'any order or other decision. . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties. . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.' FED.R.CIV. P. 54(b); *Regents of Univ. of Calif. v. Bernzomatic*, No. 2:10-cv-1224 FCD GGH, 2011 WL 666912, at *2 (E.D. Cal. Feb. 11, 2011) (relying on Rule 54 in deciding whether to reconsider the denial of summary judgment). Reconsideration is appropriate where there has been an intervening change in controlling law, new evidence has become available, or it is necessary to correct clear error or prevent manifest injustice." *Cachil Dehe Band of Wintun Indians v. California*, 649 F.Supp.2d 1063, 1069 (E.D. Cal. 2009) (citing *School Dist. No. 1J Multnomah Cnty. v. AC&S Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

A motion for reconsideration may be reviewed under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment). *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 119) "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* at 1263; *United Nat.*

*Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). "Whether to grant a motion for reconsideration is within the sound discretion of the court." *Navajo Nation v. Confederated Tribes and Bands of the Yakima Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

"The Federal Rules of Civil Procedure generally do not recognize uniform standards for a court to analyze a motion to reconsider. It is clear, however, that a "district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007).

Rule 54(b) provides that "Courts may revise interlocutory orders 'at any time before the entry of a judgment.'Fed.R.Civ. P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (stating that 'every order short of a final decree is subject to reopening at the discretion of the district judge'). Because of such discretion, '[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment.' *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) (citation omitted).

Plaintiffs' contend that under either common law or Federal Rules of Civil Procedure Section 54(b) or 60(b), the Court's order granting defendants' motion to preclude expert testimony should be reconsidered and revised and set aside.

**LEGAL ARGUMENT**

The plaintiff submits that this court's decision of October 10, 2013 which ruled, as a matter of law, that the plaintiff is precluded from establishing the value of her damages by the use of expert testimony applying the cost approach method to residential real property and which further precluded any testimony related to the costs to reproduce or replace the plaintiff's destroyed residential structure, is contrary to Connecticut law.

The court stated its decision was based on Connecticut common law, and its reasoning, in part, was based on the premise that the court was not aware of any Connecticut cases in which the cost approach had been utilized to determine value for residential property. The court further reasoned that because the property in question, in this case, was residential, it could not, as a matter of law, be "unique".

Although plaintiff's counsel, at the October 10th hearing was unable to call any such Connecticut cases to the attention of the Court, subsequent research has, in fact, revealed not just Connecticut cases, which accept the cost approach in valuation of residential property, but numerous other court decisions from many other states, together with classic textbook authority which, in fact, have allowed both expert testimony about the cost approach and have used the cost approach in valuing

residential real property damages.

In such cases, the courts have not just allowed expert witnesses to opine on the cost approach method regarding residential properties, they have approved and accepted such method in reaching their final decision as to value.

In *The Appraisal of Real Estate*, American Institute of Real Estate Appraisers, 9th Ed. (1989), at page 348, it states that the Federal Housing Administration (FHA) when creating federal policy guidelines for appraisals, specifically endorsed the use of replacement cost approach for single-family housing appraisals.

The text itself also endorses the practice. It specifically states with regard to single-family residences:

"The cost approach is particularly important when a lack of market activity limits the use of the sales comparison approach and when the properties to be appraised - e.g., single-family residences - are not amenable to valuation by the income capitalization approach."

At page 349 it states:

"When the physical characteristics of comparable properties differ considerably, the relative value of these characteristics can sometimes be identified more precisely

with the cost approach than with the sales comparison approach ... the cost approach is especially useful when building additions or renovations are being considered."

At page 71, it states:

"[the cost] approach is particularly useful in valuing new or nearly new improvements and properties that are not frequently exchanged in the market."

At page 354 it states:

"the cost approach is also useful in appraisals that require separate valuations of land and improvements."

In this case, it is the improvement alone, separate from the land, which has been damaged. Plaintiff makes no claim to damage to the land or location.

Unlike the comparison sales approach, the cost approach is frequently used to establish the value of improvements, alone, without regard to the land. Indeed, in some of the Connecticut cases, cited below, it has been used to establish the value for the improvement, separately from the land.

**Connecticut Law**

There is no real question that the cost approach is one of the three accepted methods of valuation of real property under Connecticut law. See: *Whitney Center v.*

*Hamden*, 4 Conn. App 426, 427-28, 494 A.2d 624 (1985)

Among the Connecticut cases which have utilized the cost approach to determine damages to residential property are the following:

1. *Sibley, et al v. Town of Middlefield*, 143 Conn. 100, 120 A.2d 77 (1956), a tax appeal wherein the plaintiff's own realty consisted of a residence, a garage and two lots. At trial each expert based his opinion on the reproduction cost of the structure less depreciation and obsolescence. The Connecticut Supreme Court stated: "where evidence of such sales is not available, other means must be employed to ascertain the present true and actual valuation ... thus, the method of reproduction cost has been used ... <u>no method is controlling</u>; <u>consideration should be given to them all</u>, if they have been utilized, in arriving at the value of the property." (Emphasis added)

2. *City of Bristol v. Milano*, 45 Conn. Supp. 605 (1958), a condemnation matter concerning residential property in an R-40 residential zone, where the court found that the highest and best use of the property was its present residential use, the court stated where "a cost approach was developed during the course of [the expert witness] appraisal for use in reconciling the final estimate of damage to the total property value ... the court gave due consideration to the opinion of the expert witnesses."

3. In *New England Estates, LLC v Town of Branford*, 080307 Ct. Sup, UWYX01

CV04-4010333 (Aug 3, 2007), a taking of residential property, the court stated:

"The income capitalization approach, the replacement cost approach, and the comparable sales approach are the three common methodologies for valuing real property interests."

The court went on to state: "the comparable sales approach, has long been an approved method for ascertaining the fair market value of property ... fair market value is generally best ascertained by reference to market sales ... where this method is unavailable, however, the other means are to be found by which to determine value ... a variety of such alternative methods for calculation of <u>true and actual</u> value have been approved by this court ... as a rule, however, <u>no one method is controlling</u>; <u>consideration should be given to them all</u>, if they have been utilized, in arriving at the value of property ... *Uniroyal, Inc. V. Board of Tax Review*, 174 Conn. 380, 385-86, 389 A.2d 734 (1978)" (emphasis added)

4. In *Commissioner of Transportation v. Smith*, 012802 Ct. Sup, CV00-0157089S (2002), a partial taking of a residential building with a second vacant lot, the court found the highest and best use of the property to be single-family use. Both expert witnesses used, with approval of the Court, "the sales comparison approach with respect to the valuation of the land and the cost approach for determination of the value

of the building improvement standing thereon".

5. In *Commissioner of Transportation v Weil*, 122205 Ct. Sup, CV02-0189210S, a taking of a farmhouse in an R-2A zone the expert witness appraiser used replacement cost, income and comparable sales approaches. The cost approach was used to determine the value of the structures on the property. The court accepted such combined approach as "more reasonable and accurate".

6. In *Wilson v. Kelly*, 61450, (Dec 2, 1991) a case involving a challenge to the City's assessor's use of a comparative sales approach, rather than the authorized cost approach authorized by its charter, the court upheld the challengers, who had claimed the assessors had to use the authorized cost approach method in assessing residential property for tax purposes.

7. In *Commissioner of Transportation v. Frank*, 800470, Hartford, Sept 25, 2001, the court stated:

"Buildings that are uniquely constructed or adopted for specialized use .... are held to be unique or special purpose ... to meet this unique problem, courts have specifically authorized the use of reproduction or replacement costs on this property approach to the valuation of unique property ... this is contrary to the general rule that building and land are to be used as a unit."

8. In the *Uniroyal v Middlebury Bd. of Tax Review*, supra at p. 390, the Connecticut Supreme Court stated "indeed, in determining value, <u>the trier is under a compulsion to consider everything that might legitimately affect value</u> ... the capitalization of actual income approach, the cost approach, and the court's own view of the site combine as proper consideration in pursuit or determination of value." (Emphasis added)

9. In *New Haven Water Company v. Bd. of Tax Review City of New Haven*, 166 Conn. 232 (1974) The State Supreme Court cited 1 Bonbright, Valuation of Property at p. 159 as follows: "Replacement cost less depreciation ... is deemed an acceptable measure of value when the appraiser is justified in concluding that, were the property in question to be destroyed or lost, an owner would replace it".

10. In footnote 2 of *Pepe v Bd of Tax Review Town of Woodbury*, 14 Conn. App. 705, 542 A.2d 756, Chief Justice Dupont opined "furthermore, replacement or reproduction cost is a method of valuation usually used, not only when special purpose property must be assessed, ... but when the conclusion is justified that if the property were destroyed, the owner would rationally, replace it." (Internal citation omitted)

In *Pepe v Bd. of Tax Review Town of Woodbury,* 41 Conn. Supp. 457, the Superior Court remand case, Judge Byrne clearly found and acknowledged that as a

matter of law the cost approach method would be appropriate if the appraiser were to conclude that the owner would rebuild. He found as a matter of fact, not law, that the owner of the servient estate, over which a private road ran, would not logically rebuild, and it was for this factual reason he found the cost approach not applicable.

In the present case, there is no question that the plaintiff is seeking the cost to rebuild or replace. This court can not say, as a matter of law, that the jury can not find that the owner would rationally replace the destroyed house.

What is notable for all of Connecticut precedent is the absence of any Connecticut case law which holds, as a matter of law, that the use of the cost approach method of valuation of residential real property may not be used, or that the victim of a tort may not prove the value of the loss by proof of what it will cost to replace the loss,or that residential property can not, by definition be considered unique.

## Other Jurisdictions

1. In *Ritter v. Bergmann*, 72 Mass App. Ct. 296 (2008), in a civil tort action, a Massachusetts Appellate Court case wherein the defendant had "willfully" created damages to plaintiff's residential property, the court stated: "Based on the evidence, the judge concluded that 'the Bergmann's' testimony regarding lot 11's allegedly *de minimis* loss in fair market value from the cutting and clearing is unrealistic and not a fair

measure of the damages they have caused' and that the cost of restoration was reasonably necessary in light of the damages inflicted, and was also well in proportion to the true damage suffered. The judge's conclusion was correct in light of the decision in *Glavin [v. Eckman*, 71 Mass. App. Ct. 313 (2008)], stating that market value is one way of measuring damages but does not in all cased afford a correct measure of indemnity ... the judge did not abase his broad discretion in considering evidence other than that of fair market value in determine the amount of damages"

    2. In *Sterling v. Velsicol Chemical Corporation*, 647 F. Supp. 303 (W.D. Tenn. 1986), a tort action case wherein five plaintiffs claimed their residential homes had been damaged by contamination when the defendant spilled hazardous chemicals onto their properties. Both the cost approach and the comparison sales approach were used by the plaintiffs' appraiser such method was approved and accepted by the court.

    3. In *USA v. 121.20 Acres of Land In Hyde and Washington Counties, State of North Carolina*, 333 F. Supp. 21 (E.D.N.C. 1971), a condemnation case, concerning residential property the cost approach was used to determine value.

    4. The Supreme Court of Kansas ruled in *Board of County Commissioners of Sedgwick County v. Willard J. Kisen Living Trust*, 250 Kan. 84 (1992), that the trial court was correct when limiting the appraisal to the cost approach concerning the taking of a

residence, together with developable land which was zoned for residential use. The court stated: "when the property is so unique that there is no ascertainable market and there are no sales of reasonable similar or comparable properties, the other methods, depreciated replacement cost approach or income approach ... may be used."

5. In *D.O.T. v Foster*, 586 S.E. 2d 64, the Georgia Court of Appeals ruled that where the expert witness has appraised the residential house by the cost approach and the land by the sales comparison approach, using the different methods was appropriate.

These cases not only approve the use of the cost approach in the valuation of residential properties, they demonstrate that residential properties may be considered "unique".

**Plaintiff's Damage Claim**

Plaintiff seeks to be restored to the position she was in just prior to the destruction, by fire, of the structure which was on her land as an improvement.[1]

She does not seek damages for the loss of her land, the loss of value of her land, or the loss of use of her land. She seeks only the cost to replace the structure which was on the land just prior to the fire.

---

[1] Plaintiff also seeks damages for the contents in the home.

The following hypothetical illustration demonstrates why the cost approach may be the more accurate method of calculating the true and actual value of the damages the plaintiff has suffered when the claim for damages is limited to the cost of replacing the structure, where there is no concomitant claim for loss of the land.

**Hypothetical**

Assume two homeowners, one in Darien, the other in Groton. Each homeowner builds, at the same time, identical single-family houses, each on a one acre lot in their respective towns. The cost of construction for each house is $150,000.00.[2]

The median fair market value for a single-family house lot in Darien is 9.6 times higher than the median fair market value of a single-family house lot in Groton[3], thus when the houses are completed, the Darien house has a fair market value of $1,440,000 compared to the house in Groton which has a fair market value of $150,000.

Assume both houses are burned to the ground by an arsonist on the same date.

Assume the cost to both homeowners to reproduce the same house on the date of the fire is $200,000.

---

[2]The cost of labor and materials in the construction of a single-family residence was essentially the same in all counties of Connecticut in 2008.
[3]The median residential lot sale price in Darien, in 2006 through 2008 was $1,300,000. The median residential lot sale price in Groton, in 2006 through 2008 was $135,000.

If fair market value, based on comparative sales is the only measure of valuation allowed, and the cost to reproduce or replace the structures is not allowed to be considered, the Darien owner will be allowed to prove damages of $1,440,000, while it will cost him just $200,000 to rebuild his house, thus he receives a $1,240,000 windfall.

The Groton homeowner will be allowed to prove damages equal to only the fair market value or $150,000, and thus he will not have enough money to put himself in the position he was in just prior to the fire. He has a shortfall of $50,000.

Clearly neither equity nor justice is served in either case. Clearly if the cost to reproduce or replace each structure is allowed to be used as the measure of damages, both homeowners are able to rebuild and be placed in the same position as they were in just prior to the fire, no one is placed in a deficiency position nor does anyone receive a windfall.

The value of the land and its location is not relevant to what is required to put both homeowners in the same position as they were just prior to the fires. The cost approach method is the more accurate method of measuring the value of a structure on the land, as opposed measuring the value of the land and structure as a single unit.

**<u>Unique Residential Property</u>**

The mere fact that a structure is designated as "residential", does not disqualify it

from being unique for purposes of real estate evaluation, or disqualify it, as a matter of law, from the use of any of the three approved methods of appraisal.

A residential property may be a conversion from another original use, such as a light house, fire station or church, which may make it unique and difficult to ascertain value by the comparable sales approach.

Likewise a residential structure may be unique based on its design, construction or quality of materials.

A single family residence in Lawrence, Massachusetts covered in gold leaf would be unique and difficult to find comparable sales, but its actual value may be readily ascertained by the cost approach.

Likewise a single family residence may be unique by reason of its size, quality or history, and as such have value which is not comparable to surrounding single family residences in its community.

For examples see Exhibits A through G, attached hereto, all of which are completely unique by any standard, yet all were constructed and used as single-family residential homes.

## **Conclusion**

Clearly, not just Connecticut Courts, but the majority of other jurisdictions approves the use of the cost approach in valuing residential properties. In those cases in which the cost approach is allowed to be offered by an expert, but in which the fact finder rejects the cost approach use in residential valuations, it is for factual or application reasons, rendering the approach less suitable than one of the other approaches, it is not because there is a legal bar from the introduction into evidence of the cost approach. Such factual considerations are for the fact finder to determine. In this case, that is the jury.

Whether a property is "unique" is a factual question, reserved for the finder of facts. Whether to accept the opinion of an expert is also a question reserved for the finder of facts.

THE PLAINTIFF, ULTEGRA LLC
BY _____
John J. Carta, Jr.
31 North Main Street
Essex, CT 06426
(860)-767-6570
Fax - (860)-767-6573
E-mail john@cartalaw.com
Juris No. 008727
Federal Bar No. ct 13131

PLAINTIFF, GRETCHEN CHIPPERINI
BY _____
Eugene Cushman
One Post Hill Road
New London, CT 06320
(860) 447-2692
Fax – (860)-442-3845
Email: arco.corp@snet.net
Federal Bar #CT21245

## **CERTIFICATION**

I hereby certify that on October 24, 2013 a copy of the foregoing was filed electronically and served by mail on the following person unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to any person unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

William A. Celtruda
Inmate No.: 361946,
Corrigan-Radgowski Correctional Center
986 Norwich-New London Tpke.
Uncasville, CT 06382

John Carta